[Cite as *State v. McClain*, 2015-Ohio-3690.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26602 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-3942/4 |
| | : | |
| STEPHEN McCLAIN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of September, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellee

DANIEL J. O'BRIEN, Atty. Reg. No. 0031461, 131 North Ludlow Street, Talbot Tower, Suite 1210, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Stephen McClain appeals from his conviction and sentence following a

no-contest plea to one count of engaging in a pattern of corrupt activity.

{¶ 2} McClain advances three assignments of error. First, he contends the trial court erred in finding that a search-warrant affidavit established probable cause. Second, he claims the trial court erred in failing to find that the affidavit contained materially false statements or omissions. Third, he argues that the trial court erred in failing to find a violation of his right to a speedy trial.

{¶ 3} The record reflects that McClain was indicted in January 2014 on three counts of heroin trafficking, three counts of having weapons while under disability, and one count of engaging in a pattern of corrupt activity. The charges stemmed from evidence obtained when police executed search warrants at various locations, including McClain's home. After his indictment, McClain filed various motions, including suppression motions and a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Following a hearing on the motions, the trial court found no basis to suppress the evidence. The parties subsequently entered into a plea agreement under which McClain pled no contest to the corrupt-activity charge in exchange for dismissal of the other charges. The trial court accepted the plea, found him guilty, and imposed a four-year prison sentence, which it stayed pending appeal.

{¶ 4} As a means of analysis, we will address McClain's first two assignments of error together because they both address the issue of whether the trial court's judgment overruling the motion to suppress was correct. In the first assignment of error, McClain challenges the sufficiency of an affidavit for a warrant to search his residence at 4508 Eichelberger Avenue, where drugs were found. He contends the affidavit failed to establish probable cause to believe contraband would be located inside the home. For its

part, the State asserts that the affidavit did establish probable cause. Alternatively, the State argues, as it did below, that the police acted in good faith in relying on the warrant's validity. In his second assignment of error, McClain suggests that the good-faith exception does not apply because the detective's affidavit contained materially false statements or omissions, indicating a lack of objective reasonableness and a lack of good faith.[1]

{¶ 5} We begin our analysis with the governing legal standards. Under Crim.R. 41, a request for a search warrant requires a sworn affidavit "establishing the grounds for issuing the warrant." Crim.R. 41(C)(1). The judge may issue a search warrant if the judge finds, based on the information in the affidavit, that "probable cause for the search exists." Crim.R. 41(C)(2). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be

---

[1] It may be that the ruling on the motion to suppress is a moot issue. McClain pled no contest to the second count of the indictment, engaging in a pattern of corrupt activity (RICO), a first-degree felony because one of the incidents of corrupt activity, count one of the indictment, trafficking in heroin, is a third-degree felony. The search-warrant affidavit describes information that, if proven, would be sufficient for McClain to have been convicted of the RICO charge, regardless of what evidence may have been discovered in the search at 4508 Eichelberger. We perceive the evidence discovered there to be the weapons described in counts four, five, and seven of the indictment, because all the other non-RICO counts of the indictment reflect the trafficking charges for the three drug transactions McClain personally completed well before issuance of the search warrant. Therefore, the house search, revealing the firearms, did not produce evidence necessary to support the RICO conviction. When evidence subject to a motion to suppress is not related to the eventual convicted charge, that motion to suppress issue is moot. *See, e.g.,* *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, ¶ 24 (Appellant was charged with OVI under both R.C. 4511.19(A)(1)(a) [impaired driving] and R.C. 4511.19(A)(1)(d) [per se]. His no-contest plea to the (A)(1)(a) charge rendered moot any issues regarding suppression of the breathalyzer test because the test was not necessary or required to sustain the conviction on the impaired-driving charge.). However, the issue of mootness was not raised or briefed, and the record is not clear as to the evidence discovered in the house and its relation to the RICO charge. Consequently, we decline to address mootness of the suppression ruling.

credible and for believing that there is a factual basis for the information furnished." *Id.* "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 6} The appellate standard under which a probable-cause finding is reviewed is deferential:

In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*State v. George*, at paragraph two of the syllabus.

**{¶ 7}** "Ordinarily, 'a probable cause inquiry must be confined to the four corners of the affidavit * * *.'" *State v. Leibold*, 2d Dist. Montgomery No. 25124, 2013-Ohio-1371, ¶ 31, quoting *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996). But "'[a] search warrant affidavit that is facially sufficient may nevertheless be successfully attacked if the defendant can show by a preponderance of the evidence that the affiant made a false statement intentionally, or with reckless disregard for the truth.'" *Id.*, quoting *State v. Stropkaj*, 2d Dist. Montgomery No. 18712, 2001 WL 1468905, *2 (Nov. 16, 2001), citing *Franks* at 155-156 and *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992). "Omissions count as false statements if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate.'" (Citations omitted.) *State v. Miser*, 2d Dist. Montgomery No. 25105, 2013-Ohio-1583, ¶ 12. "[A]n omitted fact in an affidavit for a search warrant, in order to be considered intentionally misleading or made with reckless disregard of its tendency to mislead the magistrate, would necessarily have to be exculpatory information, or information that impeaches a source of incriminating information." *Stropkaj* at *3.

**{¶ 8}** Here the affidavit at issue was sworn to by Detective Matt Overholt.[2] (*See* affidavit attached to Appellant's April 30, 2015 brief, identified as State's Exhibit 5 during the suppression hearing below). The affidavit covered nine single-spaced pages and provided information about a wide range of drug activity involving several people between

---

[2] The record reflects that the present case involved multiple affidavits for multiple search warrants involving various people and places. (*See* Doc. #51 at fn. 1). On appeal, McClain challenges only the validity of Detective Overholt's affidavit for a warrant to search 4508 Eichelberger Avenue.

April and October 2013. Overholt averred that he learned most of the information contained in his affidavit from his own investigation and from two confidential informants, "CI#1" and "CI#2," and a confidential source, "CS#1." According to the affidavit, CI#1 had provided information related to other investigations and had proven to be reliable based on independent police investigation and verification. CI#2 was considered reliable based on independent police verification of information he had provided. CS#1 also provided information that was consistent with information police had collected through independent investigation. CI#1 and CI#2 received financial compensation for providing information. CS#1 received "case consideration" for his help.

{¶ 9} The essence of Overholt's affidavit was that McClain headed up a heroin-trafficking operation in the Dayton area. He periodically travelled to Chicago to buy heroin from suppliers. He then transported it to Dayton and primarily used others to sell it, either themselves or through their own "runners." The affidavit identified some of these sellers by name. It also detailed eleven controlled buys made by CI#1 and CI#2, three of which were directly from Stephen McClain, in the six months before issuance of the warrant. The transactions took place at various specified locations, none of which included McClain's residence at 4508 Eichelberger Avenue.

{¶ 10} With regard to McClain, Overholt averred that in July 2013 CS#1 reported previously having seen six ounces of heroin in McClain's car. CS#1 purportedly had purchased heroin from McClain approximately 30 times, although the affidavit did not specify when or where. In August 2013, CI#2 reported that McClain was preparing to make another trip to Chicago to purchase heroin. Also in August 2013, another investigating officer saw one of the heroin sellers, Clifford Lovett, visit McClain's

residence at 4508 Eichelberger Avenue and stay for about five or ten minutes. Later that month, Lovett was seen exiting a residence where controlled drug purchases had taken place and he was seen driving a motorcycle to 4508 Eichelberger Avenue. According to the affidavit, the three controlled purchases of heroin directly from McClain were in September and October 2013. These transactions occurred in a parking lot on the east side of Dayton, in the area of North Gettysburg Avenue, and at a residence on Linnbrook Drive, which was several blocks from 4508 Eichelberger Avenue. On one of these three occasions, McClain was observed driving to 4508 Eichelberger Avenue immediately *after* the transaction.

{¶ 11} In our view, Overholt's affidavit undoubtedly established probable cause to believe that McClain played a key role in a local heroin-trafficking operation. Having examined the affidavit, however, we conclude the affidavit does not provide a "substantial basis" for finding a fair probability that evidence of drug trafficking would be found inside McClain's home at 4508 Eichelberger. On this issue, Overholt's affidavit was weak. It did not present much of a connection between the documented drug trafficking activity and 4508 Eichelberger Avenue, other than that was where McClain lived. None of the transactions occurred there, no drugs were reported being seen there, and, other than Stephen McClain driving home to 4508 Eichelberger after the September 16, 2013 drug sale, there was no report of trips to or from the residence by any of the various runners in relation to any of the drug buys. Under similar circumstances we have previously determined that a search warrant does not establish probable cause. *Cf. State v. Perez*, 2015-Ohio-1753, 32 N.E.3d 1010 (2d Dist.) (finding no probable cause for a search warrant where a supporting affidavit failed to establish a sufficient nexus between the

defendant's drug activity and a storage unit police sought to search); *State v. Terrell*, 2d Dist. Clark No. 2011-CA-57, 2013-Ohio-124 (Affidavit demonstrated three drug traffickers were distributing cocaine primarily in Dayton, but also in Springfield. "Without any corroboration whatsoever related to the Springfield address, and without any sense of the timeliness of the information, the averred facts provided almost no evidence to support a finding that drugs likely would be found inside [the Springfield address,]" *Id.* ¶ 12). Consistent with *Perez* and *Terrell*, we determine that the affidavit for the search warrant here failed to present probable cause for the search of McClain's Eichelberger residence.

{¶ 12} Lack of probable cause in the affidavit for the search warrant does not end the inquiry. Regardless of whether the warrant provided a fair probability drugs would be found at McClain's residence, we agree with the State's alternative argument that the good-faith exception applies. "The exception provides that the exclusionary rule should not be applied to bar use of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *State v. Hoffman*, 141 Ohio St. 3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 29. "The rationale for the good faith exception to suppression is that the exclusionary rule is designed to deter unlawful police behavior, and the deterrence goal is not advanced when the police objectively and in good faith rely upon a judge's probable cause determination." *State v. Cole*, 2d Dist. Montgomery No. 23058, 2009-Ohio-6131, ¶ 30. Because the good-faith exception requires "objectively reasonable reliance" on a warrant, the exception will not apply if officers knowingly mislead the issuing judge by making false statements or omitting important information from the affidavit. *Hoffman*, at ¶ 32, citing *Franks*. The exception also will not apply if an

affidavit is so lacking in indicia of probable cause as to make belief in its existence entirely unreasonable. *Id.*

{¶ 13} McClain argued below, and asserts in his second assignment of error, that Overholt's affidavit "contained materially false statements and/or omissions which deprived the issuing judge of the true facts with which to independently assess and verify the informant's credibility or lack thereof[.]"[3] Specifically, McClain contends on appeal that Overholt's affidavit failed to vouch for CI#2's credibility *and* omitted information about CI#2, who was identified at the suppression hearing and testified there, having an extensive criminal record and having an active arrest warrant at the time he was participating in the controlled buys. (Appellant's April 30, 2015 brief at 15-16). McClain reasons that these omitted facts negatively would have impacted CI#2's credibility in the eyes of the issuing judge.

{¶ 14} Following the suppression hearing, the trial court saw no grounds for suppressing the evidence found inside 4508 Eichelberger Avenue on the basis of a *Franks* violation. In particular, the trial court found no evidence of any material misrepresentations in Overholt's affidavit. Quoting that affidavit, the trial court also stated:

> Further, Det. Overholt had no reason to question the reliability of [CI#2], who was "considered reliable * * * as [the drug task force] ha[d] been able to verify * * * information provided by [CI#2] through independent investigation," including Det. Overholt **personally** witnessing multiple controlled buys **with his own eyes**. Thus, even if the warrants and orders

---

[3] Although McClain appears to raise this argument to challenge the existence of probable cause, his claim about materially false statements or omissions in Overholt's affidavit, if established, also could preclude application of the good-faith exception.

were not issued on sufficient probable cause, Det. Overholt had a legitimate

good faith belief in their validity.

(Footnotes omitted, emphasis in original.) (Doc. #51 at 6).

**{¶ 15}** We see no error in the trial court's ruling. As noted by the trial court, Overholt's affidavit *did* address the credibility of CI#2. It stated that Overholt considered CI#2 reliable because the information he had provided was verified by independent police investigation. Other portions of the affidavit indicate that the referenced independent investigation included, among other things, watching and recording CI#2 executing several controlled drug buys. With regard to the *Franks* issue McClain raises, CI#2 testified at the suppression hearing that he had an extensive criminal record and that he had a warrant for his arrest when he made the controlled buys (which he claimed to have made from people other than the McClain brothers). Overholt also testified at the suppression hearing. He refuted CI#2's testimony about not making controlled buys from the McClain brothers. Overholt admitted knowing that CI#2 was on parole or some type of supervision at the time but denied knowing anything about him having an active warrant for his arrest. Overholt also admitted knowing that CI#2 had "prior convictions" but declined to characterize his criminal history as "extensive" without having that criminal history in front of him. In its ruling, the trial court found Overholt's testimony credible and CI#2's testimony not credible to the extent that their testimony conflicted. (Doc. #51 at fn. 1).

**{¶ 16}** Because Overholt credibly testified that he had no knowledge of CI#2 having an active arrest warrant, his failure to mention that alleged fact in his affidavit cannot be considered intentionally or recklessly misleading. Although Overholt

apparently did omit his knowledge of CI#2 having some criminal record, we see no indication that Overholt intended to mislead the issuing judge or that he was reckless in that regard. Nor do we believe this particular omission was likely to mislead the issuing judge with regard to CI#2's credibility. We reach this conclusion for at least two reasons. First, we doubt whether the issuing judge would have been greatly surprised to learn that CI#2, a person with intimate knowledge of McClain's drug-trafficking activity who was participating in controlled buys, had a criminal record. Second, and more importantly, Overholt averred that he had corroborated some of the information CI#2 had provided by, as the trial court stated, observing multiple controlled buys with his own eyes. (Doc. #51 at 6). In light of this corroboration by Overholt himself, we doubt that knowledge of CI#2's criminal record would have had much impact on the issuing judge's credibility assessment.[4]

{¶ 17} Finally, we note that the content of Overholt's affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. As set forth above, the nine-page, single-spaced affidavit detailed a wide range of drug-trafficking activity involving McClain and others at various locations. Although we found scant evidence directly linking 4508 Eichelberger Avenue to this drug-trafficking activity, it was objectively reasonable for Overholt to rely in good faith on the issuing judge's probable-cause determination. As a result, the trial court correctly found the good-faith exception applicable. Therefore, we find no basis for reversal regardless of an arguable lack of probable cause. McClain's first and second assignments of error are

---

[4] The Fifth District has commented that "[c]onfidential informants are generally people with criminal records with whom people within a criminal organization would be comfortable." *State v. Rampey*, 5th Dist. Stark No. 2004 CA 00102, 2006-Ohio-1383, ¶ 39.

overruled.

**{¶ 18}** In his third assignment of error, McClain argues that the trial court erred in failing to find a violation of his right to a speedy trial.[5] Specifically, he claims a denial of "his right to a speedy trial under the Ohio Constitution, the Constitution of the United States and the Statutory Law of the State of Ohio[.]" (Appellant's June 30, 2015 supplemental brief at 2).

**{¶ 19}** The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Ohio's speedy trial statutes, R.C. 2945.71 et seq., constitute a rational effort to implement the constitutional right to a speedy trial and will be strictly enforced. *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589 (1980). In Ohio, R.C. 2945.71 requires the State to bring a felony defendant to trial within 270 days of arrest. R.C. 2945.71(C). Each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three pursuant to the triple-count provision of R.C. 2945.71(E). This "triple-count" provision reduces to 90 days the time for bringing to trial an accused who is incarcerated the entire time preceding trial. *State v. Dankworth*, 172 Ohio App.3d 159, 2007-Ohio-2588, 873 N.E.2d 902, ¶ 31 (2d Dist.). Pursuant to R.C. 2945.72, however, the time within which an accused must be brought to trial is extended by a period of delay caused by his own motions.

---

[5] McClain's opening appellate brief appears to contain three assignments of error. (*See* Appellant's April 30, 2015 brief at pg. 3). It actually contains two, however, because the third one is simply a continuation of the second. In the conclusion of his opening brief, McClain acknowledges raising two assignments of error. (*Id.* at 17). His true third assignment of error, raising a speedy-trial issue, is found in a supplemental brief he filed on June 30, 2015 with this court's permission.

{¶ 20} Applying the foregoing standards, we see no violation of McClain's right to a speedy trial. He was arrested and charged by complaint on October 8, 2013. He remained in custody until October 11, 2013, when he posted bond. The charges were dismissed without prejudice on October 21, 2013, and the case was taken to a grand jury. Therefore, McClain was entitled to nine days of speedy-trial time under the triple-count provision for the three days he spent in jail. He was entitled to another 10 days for the time that passed before the charges were dismissed. As of October 21, 2013, the State had 251 days to bring McClain to trial.

{¶ 21} Following his indictment, McClain was arrested again on January 15, 2014. He posted bond the following day, entitling him to three days of speedy-trial time under the triple-count provision. As of January 16, 2014, the State had 248 days to bring McClain to trial. Fourteen days then passed before McClain filed the first of three suppression motions in this case on January 30, 2014. As of January 30, 2014, the State had 234 days to bring him to trial. The critical issue for purposes of McClain's speedy-trial argument is how much speedy-trial time was tolled between January 30, 2014, when he filed the first of his three suppression motions, and September 5, 2014, when the trial court overruled the motions. After the trial court overruled the motions, an additional 121 days passed before McClain entered his no-contest plea, leaving 113 speedy-trial days available. Consequently, if less than 113 speedy-trial days were chargeable to the State between January 30, 2014 and September 5, 2014, McClain's right to a speedy trial was not violated.

{¶ 22} As we have noted, McClain filed his first suppression motion on January 30, 2014. (Doc. #16). He filed the additional suppression motions on April 30, 2014 and May

21, 2014. (Doc. #31, 36). The trial court originally scheduled the first motion for an April 4, 2014 hearing. (Doc. # 18). McClain filed a motion to have that hearing continued. (Doc. #25). The trial court sustained the motion and continued the hearing until May 22, 2014. (Doc. #27). That hearing went forward as scheduled on all three suppression motions. (May 22, 2014 Suppression Tr.). At the conclusion of the hearing, McClain's counsel requested and received 21 days to file a post-hearing memorandum (even though the trial court indicated that it did not think briefing was necessary). (*Id.* at 93-94). McClain's counsel subsequently sought and received a one-week extension of time to file his memorandum. (Doc. #42, 43). Both parties filed their post-hearing memoranda on June 19, 2014. (Doc. #44, 45). The trial court overruled McClain's suppression motions 78 days later on September 5, 2014, (Doc. #51) which was 218 days after he filed the first suppression motion, which had been continued at the defense request, but only 107 days after the third suppression motion which was filed May 21, 2014.

{¶ 23} The 218 days for a ruling on the suppression motions was, however, chargeable to McClain for speedy-trial purposes. McClain does not dispute that filing a suppression motion typically tolls the running of time for speedy-trial purposes. *City of Greenville v. Fortkamp*, Darke No. 97-CA91449, 1998 WL 401175 (May 15, 1998), citing R.C. 2945.72. He believes, however, that the time from May 22, 2014 to September 5, 2014 should not be tolled here because the trial court effectively made up its mind at the conclusion of the suppression hearing and then unjustifiably waited more than three months to memorialize its decision.[6] (Appellant's supplemental brief at 8-9).

---

[6] McClain also complains about Overholt finding CI#2 reliable and credible for purposes of the information in his affidavit while the trial court found CI#2's suppression-hearing testimony unbelievable. McClain argues:

**{¶ 24}** We find McClain's argument unpersuasive for at least three reasons. First, he never asserted in his one-paragraph, boilerplate speedy-trial motion (Doc. #61) that the trial's court's delay in ruling on his motions was unreasonable and should not toll speedy-trial time. Therefore, he at least arguably failed to preserve the issue for appellate review. *See State v. Reck*, 2d Dist. Darke No. 1352, 1994 WL 718230, *9 (Dec. 21, 1994) ("Reck did not allege in his January 16 motion for dismissal, nor in any other motion, that the four months the court took to decide his suppression motion was unreasonable or should not extend his speedy trial time. That issue has consequently been waived for appeal."). If McClain had complained about the delay below, perhaps the trial court could have explained it or hastened its decision. Second, McClain cites *State v. Staffin,* 4th Dist., Ross No. 07CA2967, 2008-Ohio-338, for the proposition that tolling of speedy trial time during motion practice must be reasonable. But in *Staffin*, a motion to suppress statements made by the defendant which did not involve "any uncommon or unusually complex legal issues," *Id.* ¶ 17, took 364 days decide and all of the delay was the

For the trial court to find, without foundation, in its Decision-Order that [CI#2] was utterly unreliable, after Mr. Overholt, from the Grandview Hospital Police Department, told the magistrate that [CI#2] was reliable, based on all the information in this record, including [CI#2's] sworn testimony at the hearing, under penalty of perjury, is to vitiate the definition of "reliable" as it has been commonly understood for the last past millennia and is "jiggery-pokery" use of the English language.

(Appellant's June 30, 2015 brief at 6).

Having reviewed the record, we see nothing troubling about the difference between Overholt's characterization of CI#2 in his affidavit and the trial court's characterization of CI#2's hearing testimony. Overholt averred that CI#2 was reliable and credible based on the detective's interaction with the informant and his ability to corroborate some of the informant's information. The trial court subsequently found CI#2 not credible at the suppression hearing when, among other things, he denied having made any controlled purchases of heroin from McClain. A simple way to reconcile these divergent perceptions of CI#2, of course, is to conclude that he was being truthful with Overholt and that he was lying in court in the presence of McClain.

responsibility of the State or the court, not the defense.[7] The *Staffin* court found one year to decide that motion to be presumptively unreasonable. However, the court also indicated that the 120 day time period prescribed in Sup. R. 40 for ruling on a motion serves as an indication of what is a reasonable time. *Id.* ¶ 18. Here the initial delay was the result of the defense filing multiple motions and the defense request for a continuance. The 107 days for deciding the motion which could be attributable to either the state or the court is within the parameters described in *Staffin* and therefore that case does not support finding a speedy trial violation. Third, the time involved in McClain's argument fails on the merits in any event. As set forth above, he filed supression motions on January 30, 2014, April 30, 2014, and May 21, 2014. The trial court originally scheduled an April 4, 2014 hearing for the first motion. McClain requested a continuance, and the trial court heard all three motions on May 22, 2014. We see nothing about the delay between January 30, 2014 and May 22, 2014 that would preclude the tolling of speedy-trial time.[8] We note too that McClain requested 21 days to file a post-hearing memorandum. He then obtained an extension of that time. He did not file his post-hearing memorandum until June 19, 2014. Again, we see nothing about the delay between May 22, 2014 and June 19, 2014 that would preclude the tolling of speedy-trial time. *Cf. State v. Terrell*, 2d Dist. Montgomery No. 15937, 1997 WL 368356, *4 (July 3, 1997) (noting that

---

[7] Some of the delay was related to the State's continuance of an evidentiary hearing on the motion due to the unavailability of a witness but there was also indication of lack of diligence by the State in subpoenaing its witnesses. Even after the hearing it took the trial court an additional 7 months to decide the motion.

[8] In his July 20, 2015 reply memorandum, McClain suggests that discovery problems necessitated continuing the suppression hearing from April 4, 2014 to May 22, 2014. Even if this is true, we fail to see how he was prejudiced given that he filed additional suppression motions on April 30, 2014 and May 21, 2014. Continuing the hearing until May 22, 2014 enabled the trial court to hear all three motions at the same time.

a defendant's request to file a post-hearing brief tolls speedy-trial time).

**{¶ 25}** The trial court overruled McClain's suppression motions on September 5, 2014, which was 78 days after he filed his post-hearing memorandum. Contrary to McClain's argument, we see nothing in the record to demonstrate that the trial court was unreasonable to take 78 days to render its decision. But even if we were to conclude otherwise and were to count *the entire 78 days* against the State, there would be no speedy-trial violation. As we explained above, as of January 30, 2014, the State had 234 days to bring McClain to trial. Based on the foregoing analysis, speedy-trial time undoubtedly was tolled from January 30, 2014, when McClain filed the first of his three suppression motions, until June 19, 2014, when McClain filed his post-hearing memorandum. If we accept, purely arguendo, that 78 speedy-trial days elapsed between the filing of that memorandum and the filing of the trial court's decision overruling McClain's motions, then 156 speedy-trial days remained as of September 5, 2014. After the trial court overruled the motions, 121 days elapsed before McClain entered his no-contest plea. If we subtract these 121 days from the 156 days available, the State *still had 35 speedy-trial days remaining* when McClain entered his plea. Therefore, his argument about the trial court's delay in ruling on his motions is unpersuasive. The third assignment of error is overruled.

**{¶ 26}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Daniel J. O'Brien
Hon. Steven K. Dankof