[Cite as *State v. Arnold, Jr.*, 2017-Ohio-559.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

STATE OF OHIO            :

                     :

    Plaintiff-Appellee      :    C.A. CASE NO. 2016-CA-20

                     :

v.                      :    T.C. NO. 15CR410

                     :

VICTOR ARNOLD, JR.     :    (Criminal appeal from

                     :     Common Pleas Court)

    Defendant-Appellant   :

                     :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ____17th___ day of _____February_____, 2017.

. . . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

MATTHEW J. BARBATO, Atty. Reg. No. 0076058, 2625 Commons Blvd., Suite A, Beavercreek, Ohio 45431
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} This matter is before the Court on the March 30, 2016 Notice of Appeal of Victor Arnold, Jr. Arnold appeals from his judgment entry of conviction, following his no contest pleas, to one count of possession of heroin, in violation of R.C. 2925.11(A), and one count of having weapons while under disability, in violation of R.C. 2923.13(A)(3),

both felonies of the third degree. In exchange for his pleas, the State dismissed one count of trafficking in heroin and one count of possession of cocaine. The court sentenced Arnold to three years for each offense, to be served consecutively for a total term of six years. We hereby affirm the judgment of the trial court.

{¶ 2} Arnold was indicted on August 10, 2015, and he pled not guilty on August 17, 2015. On October 5, 2015, Arnold filed a motion to suppress, asserting that "there was insufficient probable cause for the issuance of the search warrant." At the hearing on his motion, the parties presented, as Exhibit A, the search warrant for a residence located at 512 E. Rose St. in Springfield, where Arnold resided. Defense counsel directed the court's attention to the attached July 29, 2015 "Affidavit for Search Warrant" of Detective Gerald Mitchell, containing 30 paragraphs. Paragraph 3 of the affidavit lists Arnold's criminal history, which includes a possession of drugs conviction in 2000, an illegal conveyance of drugs conviction in 2003, and two possession of crack cocaine convictions in 2008, and defense counsel argued that the information contained in the paragraph is "stale." Paragraph 4 provides that Arnold "was arrested for shooting a man who owed him $110.00 in 2006" and that the case was dismissed. It further provides that Arnold was arrested in 1999 for discharging a firearm, and that that case was also dismissed. Defense counsel again asserted that the information was "stale," and that "they're really not relevant to determining whether there is actually evidence to [sic] a crime at 512 East Rose Street."

{¶ 3} Defense counsel next directed the court's attention to Paragraph 5, which provides:

5. In October of 2013, Detective Speakman and I met with Confidential

Informant (CI) #1281. This was the first time CI #1281 provided information to detectives. CI #1281 advised that he/she had personal knowledge of several 4 to 5 ounce cocaine transactions during which "Victor Arnold" was the source of supply. CI #1281 did not know where Arnold was living at the time. CI #1281 advised that Victor Arnold's phone number was 937-631-0195.

{¶ 4} Defense counsel again asserted that the information was "stale." He further argued that "even though the confidential informant might be given some degree of reliability, * * * it's the first time that the officers had ever dealt with this particular CI, so there is no way that the officers themselves can know whether the information that they were being given was credible or not because it's the first time they dealt with the CI." Defense counsel continued, "Was this purpose in saying that they actually dealt directly with Victor Arnold and got the drugs from him so they know he was the source of the supply? Or did they say that there were four or five cocaine transactions between other individuals, but they got information from somebody else that said that Victor Arnold was the source of the supply?" Defense counsel argued "you have the situation where you are getting information from a second, third, maybe fourth degree source down the line saying Victor Arnold was the source of the supply, but they have no personal involvement in the transaction itself."

{¶ 5} Counsel for Arnold next directed the court's attention to Paragraph 6, which provides: "CI #1281 also advised that he/she had personal knowledge that Jason Colquitt, who lives in Columbus, also supplies cocaine to people in Springfield, Ohio. CI #1281 advised that Jason Colquitt and Victor Arnold are brothers, and Arnold is supplied cocaine

by Colquitt." Defense counsel argued the paragraph "doesn't give you a date when that information was given, and without a date it's impossible to determine whether that is stale or not." He asserted that "[i]t's really not relevant to determining whether there is any evidence of a crime at 512 East Rose Street." He argued that "there's no corroboration to determine whether Jason Cole [sic] and Victor Arnold are brothers in the first place even if that statement were true that Coleman [sic] was the source of the supply to Arnold."

{¶ 6} Defense counsel then addressed Paragraph 7, which provides:

7. In October of 2013, Detective Speakman and I met with Confidential Informant (CI) #1269 who advised that Victor Arnold, Jr. gets cocaine from Jason Colquitt, several ounces at a time that Arnold, in turn, sells. CI #1269 has a history of providing reliable information to the Springfield Police Division in exchange for financial compensation. CI #1269 advised that Jason Colquitt and Victor Arnold are brothers who have the same mother, Juanita Colquitt. CI #1269 advised that Arnold lives at 512 E. Rose Street with his wife, Tonya Arnold. CI #1269 advised that Arnold's phone number was 937-631-0195.

{¶ 7} Defense counsel asserted that "[t]hey say they have a history providing reliable information for a financial compensation, which means the CI in and of themselves may have a reason to lie just to get financial compensation for the information they've given to the police. Again, it's stale information." Counsel further argued that "there was never any corroboration given for whether or not this is actually Mr. Arnold's phone number, and that will become important in later paragraphs of the * * * affidavit."

{¶ 8} Defense counsel next addressed Paragraph 8, which provides:

8. In November of 2013, Detective Curnutte of Champaign County Sheriff's Office and I met with confidential informant #1269 in reference to making a controlled buy of crack cocaine from Victor Arnold, Jr. The CI and the CI's vehicle were searched to make sure he/she had no other money or drugs. CI #1269 made a recorded phone call to Arnold at 937-631-0195. Arnold told the CI that he was at his mother's house. The CI was given recorded buy money, and the CI met with Arnold at Juanita Colquitt's house, 2007 Limestone St. CI #1269 gave Arnold the recorded buy money in exchange for crack cocaine. CI #1269 returned to Detective Curnutte and me, we collected the crack cocaine, and we again searched the CI and her/his vehicle.

{¶ 9} Defense counsel asserted that "this paragraph is a little more important, I guess for this reason because they actually say there is a CI involved." He asserted that "it's stale information." He noted that the transaction took place on Limestone Street, "and so it's not the same house that's involved as they want to search now." Defense counsel indicated that "we might be able to conclude that he wasn't prosecuted for that because they don't mention it in paragraph three."

{¶ 10} Defense counsel next addressed Paragraph 9 of the affidavit, which provides:

9. In checking phone records from other suspected drug traffickers obtained by subpoena and phone data extracted from phones seized during arrests and drug raids, I found that the number 937-631-0195 contacted the

following individuals several times:

Andre Terrell - last contacted July 2014

David Kidd - last contacted November 2014

Marquise McPherson – last contacted October 2014

Jerry Exxon, Jr. – last contacted August 2014

Ronald Ragland II – last contacted August 2014

The "last contacted" date is the last date for which data was available.

**{¶ 11}** Defense counsel argued that "again, there was never any corroboration whether that phone number actually belonged to Mr. Arnold.  More importantly, two things.  One, it could be attributed to innocent behavior, which I said, if it could be attributed to innocent behavior and not criminal activity, they can't establish probable cause."  Defense counsel stated, the "other thing is it's again, stale information" that "doesn't supply a basis for believing that there's evidence there was a crime at 512 East Rose Street."

**{¶ 12}** Defense counsel next addressed Paragraph 10, which  provides:  "All five of the above individuals have recently been arrested for trafficking in drugs by the Springfield Police Division I-Unit."  Defense counsel noted that "[i]t doesn't say whether they were convicted or not."  He asserted that "recently here it means to me that it probably took place sometime in 2015, which is a time after Mr. Arnold may have had contact with them.  That even if he did have contact with them, it was a long time ago, and it very well could be attributed to innocent behavior."

**{¶ 13}** Defense counsel asserted that Paragraphs 11-14 "all deal with anonymous tips." Those paragraphs provide as follows:

11.  In March of 2015, the Springfield Police Division I-Unit received an anonymous tip about 512 E. Rose Street that stated that a male and his wife are here with three kids in the house.  The tip stated that the suspicious activity is "selling out of the house, the person drive up male in house come out persons in car gets his or her product take off, sometimes, person in car get out to go on side of red truck – get product from gas department [sic] get back in car and take off this happen three times a day." The tips also advised that they had sent a previous tip on 519 E. Rose Street by mistake and that the address was actually 512 E. Rose Street.

12.  Dated April 9, 2015, the I-Unit received an anonymous tip about 512 E. Rose Street that a suspect known as "[M]oney" is selling out of the house and making hand-offs to customers.  This tip also stated that "Money kept his product in red-like truck in gas compartment."

13.  Dated April 12, 2015, the I-Unit received an anonymous tip about 512 E. Rose Street that a male "known as Money" was "sitting in car – wait for customer to come, they come pick up and leave – person come foot [sic] go in house min later – they come out take off day-night.  The female in the house knows what's going on.  There are kids in the house.  They don't care.  Neither do I!"

14.  Dated May 3, 2015, the I-Unit received an anonymous tip about 512 E. Rose Street.  Again, they identified the suspect as "Money."  The tip stated, "on this date, unknown person pull up behind house and gets out of car with music so loud, goes to the back of the house with the music still

playing loud, was there for about five minutes, went to car and took off."

{¶ 14} Defense counsel asserted that "all of these anonymous tips all they are alleging is that somebody appears to be, according to the anonymous tipster, somebody appears to be selling drugs out of this house at 512 East Rose Street." Counsel argued that there "has to be some independent corroboration that this activity is actually taking place, and what's important here is, the anonymous tip people don't say, we saw an individual because they never mentioned Mr. Arnold by name." According to counsel, "[i]t never says anything about this individual having any drugs on their person, in their hand, that they actually saw them selling drugs or handing drugs to a person and taking money in exchange." Defense counsel argued that probable cause that the person who is the subject of the anonymous tips is Arnold, and that money and drugs were exchanged, is lacking. He asserted that "it very well could be innocent behavior involved here."

{¶ 15} Regarding Paragraph 15, defense counsel argued, "I'm not really sure what this paragraph has to do with what the relevance is to this finding drugs at 512 East Rose Street." Paragraph 15 provides:

15. On May 20, 2015, officers were dispatched to 411 Indiana Ave., Springfield, Clark County, Ohio and spoke to Charlene Bullard. Ms. Bullard reported that Victor L. Arnold, Jr. came to her home with his brother causing problems and violating a protection order case 15-DP-0277. She stated that Victor Arnold, Jr. came to her home with his brother and got into a verbal argument with her family filming the incident on his cell phone. Ms. Bullard stated that she advised them about the protection order and told

them to leave. After several minutes he stopped recording and left. Two other witnesses observed Victor Arnold, Jr. in the vehicle recording the incident. Ms. Bullard also told officers that on May 19, 2015 her car was set on fire and Victor Arnold, Jr. is the suspect. She told officers that she fears for her life that Victor Arnold, Jr. will hurt her. Officers located Victor Arnold, Jr. at 512 E. Rose St. and arrested him for violation of a protection order on May 20, 2015.

**{¶ 16}** Defense counsel asserted that "[t]hey really don't provide us with any information that 512 East Rose Street may contain evidence of a crime."

**{¶ 17}** Defense counsel next addressed Paragraph 16, which provides:

16. In May of 2015, Detective Collins received a complaint from an individual who left their phone number. The caller advised that Victor L. Arnold who is 34 years old is supplying 512 E. Rose St. The caller advised that Arnold is dropping off crack and powder cocaine to 512 E. Rose Street and is driving a red or maroon Ford Explorer that has gold trim and is on 22" rims. The caller described Arnold as a short black male with dread locks. The caller also stated that Victor is dangerous and has stated that he'd never go back to prison. The caller stated that Victor has thrown a Molotov cocktail through an ex-girlfriend's window. Based upon the nature and context of this statement, I believe that Victor is stating that he will do anything to avoid going back to prison, including causing serious physical harm to officers.

**{¶ 18}** Defense counsel argued as follows:

* * * What needs to be recognized here, I guess, is that it never says whether the officers ever called back to verify who this individual is.

They don't say they talked to the individual personally or whether they got a voice mail or whether they ever tried to call the person back to verify the number that was left, if a number was left, a person that they were able to identify; and then this person basically, again, it just says that they believe that there is drugs at 512 East Rose Street.

They don't say how they know that this is going on. Another thing they mention is there is a red or maroon Ford Explorer involved here, and that vehicle may become somewhat important here in determining whether Mr. Arnold lives at 512 East Rose Street or not because later on they're going to talk quite a bit about this red truck seen at or around 512 East Rose Street, seeing a person in it, and I guess that leads us to believing that Mr. Arnold lives at 512 East Rose Street; but this doesn't give any information as to whether there's actually drugs or evidence of a crime could be found at 512 East Rose Street.

{¶ 19} Defense counsel then addressed Paragraph 17 of the affidavit, which provides:

17. On June 12, 2014, Victor Arnold, Jr. was stopped by German Township P.D. while Arnold was driving a maroon Ford Explorer with Ohio registration GDH5627. He was charged with possession of marijuana in addition to OVI and Speed. Ohio BMV records indicate that vehicle is currently registered to Tonya Arnold at 512 E. Rose St.

{¶ 20} Defense counsel argued that "again, I'm not sure how this is relevant to drugs being found at 512 East Rose Street that said that Mr. Arnold was charged with possession of marijuana and charged with an OVI in June of 2014." He asserted that "the information * * * is stale, and it doesn't give us any basis to believe there's any evidence of a crime found at 512 East Rose Street." He asserted that "what they are trying to say by that is the vehicle that Mr. Arnold was in is registered to Tonya Arnold who lives at 512 East Rose Street."

{¶ 21} Defense counsel argued that Paragraph 18, "again, is an anonymous tip." That paragraph provides:

18. In June and July of 2015 the Springfield Police Division I-Unit received five anonymous complaints on 512 E. Rose St. The complaints described a suspect referred to an "Money" meeting with people in cars in front of the house as well as people walking up to the house. The complaints also described hand to hand transactions between "Money" and the people with whom he meets.

{¶ 22} Defense counsel asserted that since "it doesn't say, I think Mr. Arnold gets the benefit of the doubt that this is an anonymous tipster; and if that's the case, then there has to be some independent corroboration, which that kind of a tipster is to be given the least amount of credibility." Defense counsel argued that "[t]hey don't say that this person they described as 'Money' is Mr. Arnold." He asserted, "It's in front of 512 East Rose Street. Again, there is no indication that there was actually drugs exchanged for money. Whether anybody ever saw drugs." Defense counsel further argued that "it can just be based on innocent behavior. Somebody meeting somebody out in front of the

house in a car, having a brief conversation and the two parting ways."

{¶ 23} Defense counsel next directed the court's attention to Paragraph 19, which provides: "On June 18, 2015, Detective Collins performed surveillance at 512 E. Rose Street and saw a maroon Ford Explorer on large rims parked in front of 512 E. Rose Street. Detective Collins saw a black male driver leave in the vehicle. The vehicle returned to 512 E. Rose Street later that day with at least one passenger." Defense counsel argued as follows: "June of 2015, the detective actually gets involved here and they start performing surveillance at 512 East Rose Street where they say they see this maroon Ford Explorer parked in front of 512 East Rose Street." He asserted that the "only purpose in that is trying to establish based on that Mr. Arnold lives at this particular residence, which may or may not establish that. It still doesn't give us any indication yet that there is probable cause to believe that there is evidence of a crime found at that address."

{¶ 24} Defense counsel next addressed Paragraph 20 of the affidavit, which provides:

20. On July 10, 2015 Sgt[.] Bennett saw a white Dodge Charger, Ohio registration EGK4548 parked in front of 512 E. Rose St. Later in the day around approximately 1315 hours, Officer Anderson saw a male fitting the description of Victor Arnold, Jr. standing near this car which was still parked in front of the residence. On July 23, I learned this vehicle was rented by Tonya Arnold.

{¶ 25} Defense counsel asserted that "[t]hey believe he was driving [the Charger] at one time, and the Dodge Charger was parked in the vicinity of 512 East Rose Street,

which again, I guess, to they're [sic] trying to link Mr. Arnold with the property in question being involved at that 512 East Rose Street."

{¶ 26} Defense counsel then directed the court's attention to Paragraph 21 of the affidavit, which provides:

21. In July of 2015, I received information from Confidential Source (CS) #1289. CS #1289 has provided reliable information to detectives, that detectives were able to independently verify, that helped lead to a search warrant and seizure of a large amount of narcotics and U.S. Currency. CS #1289 advised that "Vic Arnold" is selling crack cocaine, power cocaine, and heroin. CS #1289 stated that Arnold is still on Rose Street; however, he meets customers on Clay Street near an alley around the corner from his house on Rose Street. CS #1289 also provided Arnold's current phone number, 937-631-6424.

{¶ 27} Defense counsel asserted, "They give a phone number. Now it's a different phone number, but again, no corroboration that it's actually Mr. Arnold's phone number." He argued that the "other thing here is, this informant is not saying that he personally was involved in any transactions with Mr. Arnold. He's just saying that he has knowledge that Mr. Arnold was involved in the transactions somehow." Defense counsel further asserted that "it's to be given very little credibility that drugs were going to be found at 512 East Rose Street because who knows where the confidential informant may have gotten that information from in light of the fact that he ever [sic] actually said, I was involved in the transactions or the transfer of the drugs themselves."

{¶ 28} Regarding Paragraph 22, Defense counsel argued, "I'm not sure that has a

lot of relevance here. Just trying to determine, I guess, that Mr. Arnold may have lived at this house at 512 East Rose Street. Paragraph 22 provides:

22. On July 20, 2015, Detective Collins spoke to a known employee at Springfield Housing Authority. The employee advised that 512 E. Rose Street was a Section 8 house that was rented by Tonya Arnold. The employee advised that the Metro staff was aware that Tonya Arnold lived there with her husband, Victor Arnold, Jr., and their three children. In reviewing the records, the employee advised that Tonya Arnold failed to add her husband as a member of the household.

{¶ 29} Defense counsel next addressed Paragraph 23 of the affidavit, which provides:

23. On July 21, 2015, Sgt. Bennett and I drove by 512 E. Rose Street, westbound. Sgt. Bennett saw a maroon Ford Explorer on rims parked behind 512 E. Rose Street. As we crossed Clay Street we saw Victor Arnold, Jr. in the middle of Clay Street, just north of E. Rose Street, walking eastbound away from an occupied vehicle that was parked on the west curb. As we drove by, Arnold turned around and appeared to be communicating with the occupants of the parked vehicle.

{¶ 30} Counsel for Arnold argued, "Again, it's an innocent behavior type thing. It doesn't establish probable cause."

{¶ 31} Defense counsel directed the court's attention to Paragraph 24 of the affidavit, which provides:

24. On July 22, 2015, I drove by 512 E. Rose Street and by the area on

-15-

Clay Street where we had seen Victor Arnold, Jr. the day before. I saw a maroon Explorer on rims parked behind 512 E. Rose St. The alley behind the house provides easy access to Clay Street where Sgt. Bennett and I saw Victor Arnold, Jr. on July 21, 2015. See attached Exhibit A, showing an overhead view of the area. 512 E[.] Rose St. is marked on the Exhibit, and the area where Victor Arnold, Jr. meets with customers is marked with a circle. The alley behind 512 E. Rose St. is clearly visible, and abuts a large vacant lot to the north.

{¶ 32} Regarding Paragraph 24, defense counsel asserted that "it's just saying that they saw Mr. Arnold in the area of 512 East Rose Street, but it doesn't say that he's necessarily doing anything." He asserted that he was "not sure if that's really relevant to establish probable cause or if it doesn't establish probable cause, because it could be attributed to innocent behavior. It might go towards Mr. Arnold lives at 512 East Rose Street."

{¶ 33} Defense counsel next addressed Paragraph 25, which provides:

25. On July 23, 2015, I drove by 512 E. Rose Street at approximately 1:25 PM. There was a white Dodge Charger parked directly in front of the house. The Charger had Ohio registration EGK4548 which is registered to PV Holding Corporation. I contacted Jill Willis with Avis Car Rental. He advised that the vehicle was rented by Tonya Arnold on July 8, 2015 and was due back on July 22, 2015.

{¶ 34} According to defense counsel, "they're maybe trying to establish that Arnold lives at 512 East Rose Street but not establishing probable cause or any evidence of a

crime found at that address." Defense counsel repeated these arguments as to Paragraph 26, which provides: "26. According to the Ohio Law Enforcement Gateway (OHLEC) Victor Arnold, Jr. listed 512 E. Rose Street in Springfield, Ohio as his address on his State of Ohio ID issued on April 9, 2014."

**{¶ 35}** Defense counsel next addressed Paragraphs 27 -28, which provide as follows:

27. On 7-27-15, at approximately 12:35 PM, Officer Hoying saw the white Dodge Charger with Ohio registration EGK4548 parked near 512 E. Rose Street. Officer Hoying also saw Victor Arnold, Jr. standing at the driver door looking around before getting in the driver's door and driving away from the area. I asked Officer Hoying what Arnold was wearing, and Officer Hoying stated that he was paying more attention to the license plate, but he thought Arnold was wearing a "sky blue" shirt. Officer Hoying also advised that Arnold had his hair in a ponytail.

28. After speaking with Officer Hoying, on 7-27-15, I set up a surveillance camera on Clay St. to monitor the area that CS #1289 described where Victor Arnold, Jr. meets customers. The following was observed in the area of Clay St. and the alley that runs behind 512 E. Rose Street.

3:27 PM – Video recording activated around this time and there was a dark Tahoe style SUV parked on the east curb of Clay Street, just north of E. Rose Street, near the alley that runs east and west behind 512 E. Rose Street.

3:32 PM – Victor Arnold, Jr. wearing a light blue shirt, exited the alley and

put his left hand into the passenger side window of the Tahoe style SUV. Approximately six seconds later Arnold walked away from the vehicle and the vehicle left northbound on Clay Street. Arnold walked east in the alley toward the rear of 512 E. Rose Street.

3:55 PM – A dark colored SUV, possibly a Ford Explorer, arrived from the north and parked on the west curb of Clay Street across the street from the same alley as mentioned above. Nobody exited or entered the vehicle.

4:19 PM – Victor Arnold, Jr. wearing the same clothes with his hair in a ponytail, exited the alley and crossed Clay Street. He met with the occupants of the Explorer via the driver side window.

4:22 PM – Victor Arnold, Jr. walked away from the Explorer and returned to the alley eastbound toward his house. The Explorer immediately left the area as well.

4:27 PM – A white Charger, likely the same one seen in front of 512 E. Rose recently, leaves the area from E. Rose Street to N. Clay Street northbound.

**{¶ 36}** Defense counsel argued that Paragraphs 27 and 28 fail to establish probable cause, and that the conduct described in Paragraph 28 "can be attributable to innocent behavior." He stated that "in none of them do they say that they actually know or have probable cause to believe that there is any drugs involved for the matter."

**{¶ 37}** The prosecutor argued that "the standard of review is not whether you would find probable cause in this case, but whether you would find that the issuing magistrate * * * has substantial basis from which to find probable cause." He stated that "if the Court takes the totality of the search warrant together, it's clear that there was, in fact, probable

cause." The prosecutor argued as follows:

There is a history of this defendant going back several years showing that he is, in fact, a drug dealer. That's very important and relevant to the finding of probable cause in this case.

And the fact that he's been nothing but a drug dealer for fifteen years is pretty relevant.

There is confidential informant information, confidential source information that is very specific about his activities; and the observations of the officers bear that out.

There is information from one of the sources that he meets people in the alley behind the house where off the alley behind the house [sic], around the corner, which is exactly what the officer sees and that that's drug activity.

And two days before the search warrant is signed, that is exactly what they saw. He sticks his hand in the car and meets with somebody for a very short period of time. People wandering through the neighborhood. One of them sat and waited for quite some time before he came over and met with him.

As to paragraph sixteen, I'd say that's not actually an anonymous complaint. It indicates the person left a phone number. That's the option of being anonymous is giving the police a way to contact you.

Again, all the information taken together it's clear that there was a lot more than enough sufficient probable cause that there would be drugs at

this address, and that the defendant was selling heroin out of it and other drugs.

And finally, although I don't think it's necessary so as not to waive the argument, we would also point out that if this Court were to find for some reason that there is not enough basis for the issuing judge to find probable cause, certainly the officers in this case acted in good faith.

We have no reason to believe that they did not possess a valid search warrant when they executed the warrant.

{¶ 38} In overruling the motion to suppress, the trial court indicated in part as follows:

* * *

The Court finds that the affidavit accompanying the aforementioned warrant contains sufficient indicia of probable cause to pass muster under the Fourth Amendment to the United States Constitution.

Upon being presented with the information contained in the affidavit, a reasonable prudent person would believe that there is a fair probability that the place to be searched contained evidence of a crime. Therefore, the Court concludes that the issuing judge had a substantial basis for concluding that probable cause existed[.]

{¶ 39} Arnold asserts the following assignment of error:

THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE SEIZED AS A RESULT OF THE JULY 31, 2015 SEARCH OF THE RESIDENCE AT 512 E. ROSE ST.,

WHICH SEARCH WAS AUTHORIZED BY A WARRANT THAT WAS NOT BASED ON PROBABLE CAUSE.

**{¶ 40}** Arnold asserts that Mitchell's affidavit "goes into great detail about law enforcement ability to verify Mr. Arnold's identity, his residence and the vehicle it [sic] drives. However, very little reliable, verified information is provided as to probable cause that narcotics would be found in his residence when it was searched." Arnold argues that "law enforcement attempts to bolster their affidavit with allegations of previous drug convictions and anonymous tips. There is no direct evidence establishing probable cause that contraband will be found in Mr. Arnold's residence on the date searched." Arnold asserts that "Paragraph 28 of the affidavit herein alleges suspected criminal activity that involved Mr. Arnold as he spoke to someone in the alley of Clay Street. This is a classic example of guilt by association. Law enforcement has no personal knowledge that Mr. Arnold or the occupants of the vehicle he approached were in violation of any laws of this State." Arnold asserts that the "Affidavit herein alleges activity that span[s] from 2013 until July of 2015. Out of 30 paragraphs, only one alleges suspected criminal activity around the time the search warrant is requested. (Para. 28)."

**{¶ 41}** The State responds that the "search warrant at issue in this case provided the issuing judge with sufficient evidence that when looked at in totality showed a fair probability that contraband or evidence of a crime, in this case trafficking in drugs, would be found at a p[article place." According to the State, "Appellant at the suppression hearing and here on appeal seeks to look at the search warrant paragraph-by-paragraph to argue that there was not sufficient evidence for the court to sign the search warrant." The State argues that the "warrant in this case provided the court with the background

information that led the Springfield Police Division I-Unit to begin an investigation into Victor Arnold, Jr. and how through their investigation into Appellant that they came to believe that he was selling drugs out of 512 E. Rose Street in Springfield, Ohio." The State asserts that there "is also information from a confidential informant in the warrant at paragraph 21 that gives specific information to the officers about where Appellant is selling drugs. There are also tips in paragraphs 13, 14, 16 and 18 that describe the drug activity happening at Appellant's address." The State argues that officers did not "request a warrant based on these tips and confidential informant sources alone, they further investigate and confirm this information." Finally, the State asserts that if "this Court finds that there was not enough of a basis for the issuing judge to find probable cause then certainly the officers executing the search warrant in this case acted in good faith as they were conducting a search pursuant to a search warrant signed by a judge."

{¶ 42} As this Court has previously noted:

We begin our analysis with the governing legal standards. Under Crim.R. 41, a request for a search warrant requires a sworn affidavit "establishing the grounds for issuing the warrant." Crim.R. 41(C)(1). The judge may issue a search warrant if the judge finds, based on the information in the affidavit, that "probable cause for the search exists." Crim. R. 41(C)(2). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Id.* "In determining the sufficiency of probable cause in an affidavit submitted in support of a search

warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

*State v. McClain*, 2015-Ohio-3690, 41 N.E.3d 871, ¶ 5 (2d Dist.).

**{¶ 43}** "A search warrant's supporting affidavit has a presumption of validity. *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980)." *State v. Oloff*, 2d Dist. Greene No. 2012-CA-34, 2012-Ohio-6048, ¶ 12. "The standard of probable cause is a fair probability, not a *prima facie* showing of criminal activity." *State v. Deleon*, 2d Dist. Montgomery No. 17574, 2000 WL 646502, *12 (May 19, 2000), citing *State v. George*.

**{¶ 44}** In *George*, at paragraph two of the syllabus, the Supreme Court of Ohio set forth our deferential appellate standard of review as follows:

In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court not an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to

ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

**{¶ 45}** As this Court has noted:

An affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time. *State v. Jones*, 72 Ohio App.3d 522, 526, 595 N.E.2d 485 (6th Dist. 1992). No arbitrary time limit dictates when information becomes "stale." *Id*. The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched. *State v. Floyd*, 2d Dist. Darke No. 1389, 1996 WL 139787 (Mar. 29, 1996). If a substantial period of time has elapsed between commission of the crime and the search, the affidavit must contain facts that would lead the judge to believe that the evidence or contraband is still on the premises before the judge may issue a warrant. *State v. Yanowitz*, 67 Ohio App.2d 1441, 147, 426 N.E.2d 190 (8th Dist. 1980).

"Ohio Courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as

in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident." *State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303. "[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

*State v. Richardson*, 2d Dist. Greene No. 2011 CA 2, 2012-Ohio-1232, ¶ 10-11.

{¶ 46} Regarding informants, as this Court has previously noted:

"Courts have generally recognized three categories of informants: (1) the identified citizen informant, (2) the known informant, i.e., someone from the criminal world who has a history of providing reliable tips, and (3) the anonymous informant." *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 36, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999).

"Where a confidential or anonymous informant is the source of the hearsay, the 'informant's veracity, reliability and basis of knowledge are all highly relevant' in a totality of the circumstances probable cause determination. *Gates* at 230 (internal quotations omitted). There must be some basis in the affidavit to indicate the informant's credibility, honesty or reliability. An affidavit which contains detailed information from informants (permitting an inference that illegal activity was personally observed by the informants), police corroboration of an informant's intelligence through its

own independent investigation, or additional testimony by the affiant helps to bolster and substantiate the facts contained within the affidavit. While individual facts and statements themselves may not separately support a probable cause determination, a reviewing court must weigh all of the components together because '[p]robable cause is the sum total of [all] layers of information.' " (Citations omitted.) *State v. Harry*, 12th Dist. Butler No. CA2008-01-0013, 2008-Ohio-6380, ¶ 20.

*State v. Mitchell*, 2d Dist. Montgomery No. 25402, 2013-Ohio-622, ¶ 19-20.

**{¶ 47}** As this Court has further noted, while an informant's veracity, reliability and basis of knowledge are highly relevant factors to the determination of probable cause, "those factors are not separate and independent requirements but, rather, 'intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is locates a particular place.' " *State v. Harris*, 2d Dist. Montgomery No. 18913, 2002 WL 1041868, * 1 (May 24, 2002), quoting *Gates* at 320. "Accordingly, an informant's tip may be reliable despite the deficiency in one factor where there is a strong showing of another factor or some other indicia of reliability." *Harris*, citing *Gates* at 233.

**{¶ 48}** Finally, we note that the "Supreme Court of the United States held that evidence obtained in violation of the Fourth Amendment by an officer acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded from state criminal prosecution. (Citations omitted)." *State v. Crawford*, 2d Dist. Montgomery No. 16830, 1998 WL 754556, *4 (Oct. 30, 1998).

**{¶ 49}** Having reviewed the affidavit thoroughly, we conclude that the issuing

judge had a substantial basis for concluding that probable cause existed that drugs were present at 512 E. Rose Street at the time the warrant was issued. We initially note that Mitchell is an experienced police officer. His affidavit provides, at Paragraph 1, as follows:

> 1. * * * During my time in the Intelligence Unit, I have been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, and supervised the activities of informants who have provided information in drug trafficking investigations. Through my training and experience, I am familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived. * * *

{¶ 50} While the initial paragraphs of the Affidavit relate to Arnold's prior criminal history and not events immediate to the search, the paragraphs do, however, provide a background for the I-Unit's investigation into Arnold's activities. In the months leading up to July, 2015, the police received repeated anonymous tips that the male resident of 512 E. Rose Street was "selling out of the house," and that "Money" was "making handoffs to customers" there. Victor Arnold was located at the Rose Street address on May 20, 2015 and arrested for violating a restraining order. In June and July of 2015, the I-Unit received five anonymous complaints regarding "hand to hand transactions" at the Rose Street address. In July of 2015, CS #1289, advised that Arnold "is selling crack cocaine, powder cocaine, and heroin." Specifically, CS #1289 indicated that "Arnold is still on

Rose Street; however, he meets customers on Clay Street near an alley around the corner of his house on Rose Street." CS # 1289 previously provided reliable information "that detectives were able to independently verify, that helped lead to a search warrant and seizure of a large amount of narcotic and U.S. Currency." On July 20, 2015, Detective Collins was advised by a known employee of the Springfield Housing Authority that Arnold resided at 512 E. Rose Street with his wife, Tonya Arnold, who rented the home. On July 21, 2015, Mitchell observed Arnold walking away from an occupied vehicle on Clay Street in the area described by CS # 1289. On July 27, 2015, Mitchell set up surveillance in the area described by CS #1289, and video revealed Arnold approach a vehicle from the alley behind his home and put his left hand into the vehicle on the passenger side. Six seconds later, "Arnold walked east in the alley toward the rear of 512 E. Rose Street," and the vehicle drove away. On the same day, surveillance video depicted Arnold approach another vehicle in the same area and meet with the occupants on the driver's side of the car. Shortly thereafter, Arnold "returned to the alley eastbound toward his house," and the second vehicle "immediately left the area as well."

{¶ 51} According great deference to the issuing judge's determination of probable cause, we conclude that the timely facts alleged in the affidavit support an inference that Arnold was removing drugs he stored at his home and selling them to customers in waiting cars when he was observed by Mitchell on July 21, 2015 and twice on surveillance video on July 27, 2015, and that there was accordingly a fair probability that drugs would be found in his home. Accordingly, Arnold's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Megan M. Farley
Matthew J. Barbato
Hon. Douglas M. Rastatter