OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Russell Clark, filed February 5, 2008. On September 2, 2007, Clark was cited for operating a vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a), and for driving outside marked lanes, in violation of R.C. 4511.33. On October 19, 2007, Clark pled not guilty, and he filed a *Page 2 
Motion to Suppress "the arrest and observations of the officer for the reasons that the officer lacked reasonable suspicion upon which to stop and detain the Defendant." Clark also sought to suppress his statements made pursuant to the arrest. On December 18, 2007, a hearing was held on Clark's motion in Darke County Municipal Court.
 {¶ 2} At the suppression hearing, Trooper Nadi Antonio Charlie Fuentes Graham testified. According to Graham, who had been a trooper since 2001, he was driving northbound on State Route 49, when he observed Clark's southbound vehicle "driving partially over the berm over the white line" by about eight to ten inches. Graham testified that he turned around to follow Clark, and as he "started to catch up to him, he again drove over the white line." When Graham activated his lights and siren, Clark pulled into a private parking lot. Graham identified himself to Clark and informed him that he stopped him for the lane violations. Graham testified, "[u]pon initial contact with the driver, I noticed an odor of an alcoholic beverage about the vehicle." Graham characterized the odor as "medium." Clark initially agreed to perform field sobriety tests, but then refused to do so. Clark stumbled "as he was coming to a stop to stand still" after exiting the cruiser. Graham testified that Clark had bloodshot, glassy eyes, and that his speech was slurred. Clark told Graham that he had two beers to drink. Graham testified that he had arrested roughly 60 to 65 DUIs so far that year. Based upon his experience and training, Graham was of the opinion that Clark was intoxicated, and he made an arrest. The municipal court overruled Clark's Motion to Suppress on December 19, 2007.
 {¶ 3} Clark filed a Jury Demand, which the municipal court denied as untimely on January 3, 2008.
 {¶ 4} On January 8, 2008, Clark entered a no contest plea to the charges, and he was found guilty. On the OVI charge, Clark was sentenced to 180 days, and the court suspended all but twenty *Page 3 
days. Clark was placed on two years probation on the condition that he have no similar violations for two years, and that he pay $100.00 a month toward his fines and court costs. Clark was also required to report for an evaluation.
 {¶ 5} Clark asserts two assignments of error. His first assignment of error is as follows:
 {¶ 6} "THE TRIAL COURT SHOULD HAVE ORDERED THE EVIDENCE SUPPRESSED BECAUSE AT THE SUPPRESSION HEARING THE OFFICER FAILED TO ARTICULATE AREASONABLE SUSPICION FOR STOPPING THE VEHICLE."
 {¶ 7} "Appellate courts give great deference to the factual findings of the trier of facts. (Internal citations omitted). At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence. (Internal citations omitted)." State v. Purser, Greene App. No. 2006 CA 14,2007-Ohio-192, ¶ 11.
 {¶ 8} R.C. 4511.33 provides, "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply: (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such *Page 4 
lane or line until the driver has first ascertained that such movement can be made with safety." Clark argues that a number of Ohio State courts "have interpreted the statute to mean that crossing the marked line will not necessarily justify a traffic stop."
 {¶ 9} The Ohio Supreme Court recently answered the following certified question in the affirmative: "May a police officer who witnesses a motorist cross a right white edge line and without any further evidence of erratic driving or that the crossing was done in an unsafe manner make a constitutional stop of the motorist?" State v. Mays (2008), 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4539, ¶ 1. In Mays, a State trooper observed the vehicle ahead of him cross the white lane markings on the right side of the road by about one tire width. Moments later, he observed the vehicle again drift across the right line by about a tire width and then drift back into the lane of traffic. The trooper observed no other traffic violations. The trooper followed the vehicle for about a mile and a half, and then initiated a traffic stop.
 {¶ 10} When asked for his driver's license Mays presented a credit card. The trooper noticed an odor of alcohol, and that Mays' eyes were bloodshot and glassy. The trooper removed Mays from the car, and Mays refused to perform any field sobriety tests. Mays was arrested and charged with OVI, in violation of R.C. 4511.19(A)(1)(a), and crossing marked lanes, in violation of R.C. 4511.33.
 {¶ 11} Mays filed a Motion to Suppress, which the trial court sustained, "concluding that the trooper did not have a reasonable and articulable suspicion to support the traffic stop." Id., at ¶ 4. On appeal, the Fifth District, in contrast, determined that the trooper had a reasonable articulable suspicion that appellant may have violated R.C. 4511.33, and, therefore, the stop was justified. *Page 5 
 {¶ 12} The Supreme Court began its analysis by noting that theFourth Amendment to the United States Constitution and Article 1 of the Ohio Constitution protect us from unreasonable searches and seizures. "The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime. (Internal citations omitted). Further, `[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' (Internal citations omitted).
 {¶ 13} "Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." Id., ¶ s 7-8.
 {¶ 14} As the Mays Court noted, "` * * * the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' (Internal citation omitted). The "reasonable and articulable suspicion" analysis is based on thecollection of factors, not the individual factors themselves.' (Emphasis sic.) (Citation omitted).
 {¶ 15} "As the United States Supreme Court elaborated in Berkemer v.McCarty, a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion. 468 U.S. at 439,104 S.Ct. 3138, 82 L.Ed.2d 317.
 {¶ 16} "`[T]he stop and inquiry must be "reasonably related in scope to the *Page 6 
justification for their initiation."' (Citations omitted). Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. (Citation omitted). The opposite result is also true: if the detainee's answers provide the officer with probable cause to arrest him, then it is proper for the detainee to be arrested." Id., ¶ 12-14.
 {¶ 17} Mays argued that R.C. 4511.33(A) does not prohibit leaving one's lane and that strict compliance with the statute is not required. Further, Mays argued, "there was not reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane `as nearly as [was] practicable' * * *" Id., at ¶ 17.
 {¶ 18} In rejecting Mays' arguments, the Supreme Court first noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id.
 {¶ 19} In examining R.C. 4511.33(A)(1), the Supreme Court determined, the "phrase `as nearly as practicable' does not give the driver the option to remain within the lane markings; rather, the phrase requires the driver to remain within the lane markings unless the driver cannot reasonably avoid straying." Id., ¶ 18.
 {¶ 20} Quoting the Seventh District Court of Appeals, the Supreme Court noted, "The legislature did not intend for a motorist to be punished when road debris or a parked *Page 7 
vehicle makes it necessary to travel outside the lane. Nor * * * did the legislature intend this statute to punish motorists for traveling outside their lane to avoid striking a child or animal. * * * [T]he legislature did not intend the statute to give motorists theoption of staying within the lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable.'" Id., at ¶ 19. The Supreme Court concluded, "when an officer could reasonably conclude from a person's driving outside the marked lanes that the person is violating a traffic law, the officer is justified in stopping the vehicle." Id., at ¶ 20.
 {¶ 21} As in Mays, Graham observed Clark drift across the right hand berm line twice, and he accordingly had a reasonable and articulable suspicion that Clark violated R.C. 4511.33. There was no evidence of special circumstances justifying Clark's repeated drifting from his lane to the right, and Graham could reasonably conclude, under the totality of the circumstances, that Clark was violating a traffic law such that Graham was justified in stopping Clark. There being no merit to Clark's first assignment of error, it is overruled.
 {¶ 22} Clark's second assignment of error is as follows:
 {¶ 23} "THE ARREST IN THIS CASE VIOLATED THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION BECAUSE THE OFFICER MADE THE ARREST WITHOUT PROBABLE CAUSE."
 {¶ 24} "In State v. Thomas, Montgomery App. No. 21430, 2006-Ohio-6612, we observed: *Page 8 
 {¶ 25} The standard of probable cause is a practical, nontechnical concept that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Illinois v. Gates (1983), 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527. Probable cause is a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily or even usefully reduced to a near set of legal rules. Id. In substance, probable cause depends upon the totality of the circumstances that present reasonable grounds for belief of guilt, and that belief of guilt must be particularized with respect to the person to be searched or seized. (Citations omitted). To determine whether an officer had probable cause to arrest an individual, a court must examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" State v. Pencil, Clark App. No. 07CA0057, 2007-Ohio-7164, ¶ 14-15.
 {¶ 26} According to Clark, the smell of alcohol, alone, does not indicate intoxication. Clark further argues that bloodshot and glassy eyes may be the result of allergic reactions, hours without sleep, medical conditions or the lateness of the hour. Clark asserts that slurred speech and stumbling may be caused by fatigue, and not necessarily intoxication. Clark relies in part on State v. Dixon, Greene App. No. 2000-CA-30. In Dixon, the defendant was pulled over at 2:20 a.m. for a window tint violation. The officer initiating the stop noticed an odor of alcohol on Dixon's person, and Dixon admitted that he had consumed one or two beers. The officer asked Dixon to perform field sobriety tests, and during that time, the officer learned that Dixon had an active warrant for his arrest. It was undisputed that the officer had a right to stop Dixon and ultimately arrest him, but the issue was whether the officer had the right to administer *Page 9 
the field sobriety tests. Citing State v. Spillers (March) 24, 2000), Darke App. No. 1504, we determined, "[t]he mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence. Nor is the subject's admission that he had one or two beers." While the trial court overruled Dixon's motion to suppress, we reversed and remanded for further proceedings, determining that the factors present did not warrant the additional intrusion of field sobriety tests.
 {¶ 27} Here, the smell of alcohol, and an admission to drinking two beers alone did not result in Clark's arrest. Graham's further observations gave Graham probable cause to arrest Clark; Clark drifted from his lane of travel twice, in violation of R.C.4511.33, he smelled of alcohol, he admitted to drinking beer, he had bloodshot and glassy eyes, and slurred speech. Clark was unsteady on his feet, and he stumbled when he exited his vehicle. Since these facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause under R.C. 4511.19(A)(1)(a), Clark's second assignment of error lacks merit, and it is overruled. Judgment affirmed.
WOLFF, J. and GRADY, J., concur.
 Philip D. Hoover, Jon Paul Rion, Hon. Julie L. Monnin. *Page 1