[Cite as *State v. Gladman*, 2014-Ohio-2554.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                              :

      Plaintiff-Appellee                   :               C.A. CASE NO.    2013 CA 99

v.                                         :               T.C. NO.    12TRC12332

TERRY L. GLADMAN, II                       :               (Criminal appeal from
                                                            Municipal Court)

      Defendant-Appellant                  :

                                           :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____13th_____ day of _____June_____, 2014.

. . . . . . . . . .

MARC T. ROSS, Atty. Reg. No. 0070446, Prosecutor's Office, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

DAVID M. McNAMEE, Atty. Reg. No. 0068582, 2625 Commons Blvd., Suite A, Beavercreek, Ohio 45430
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Terry L. Gladman, II, appeals his conviction and sentence for one count of operating a vehicle under the influence of alcohol (OVI), in

violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree. Gladman filed a timely notice of appeal with this Court on November 15, 2013.

{¶ 2} The incident which gives rise to the instant appeal occurred on October 13, 2012, at approximately two a.m. when Sergeant Brad Barnhart of the Clark County Sheriff's Office observed a truck driven by Gladman merge onto East National Road in Clark County, Ohio, from the vicinity of the Horseshoe Bar. While following behind, Sgt. Barnhart observed the truck drive onto or cross over the white line on the edge of the road between eight to ten times within a span of two miles. Sgt. Barnhart testified that he also observed that Gladman turned on his turn signal for approximately ten seconds but never turned anywhere. Based on his observations, Sgt. Barnhart activated his overhead lights and initiated a traffic stop of the truck.

{¶ 3} Upon approaching the truck and speaking with Gladman, Sgt. Barnhart observed that his eyes were glassy, his speech was very slurred, and that he had a "moderate" odor of alcohol about his person. Sgt. Barnhart asked for Gladman's license, registration, and proof of insurance. Gladman, however, only provided Sgt. Barnhart with his driver's license. Sgt. Barnhart testified that Gladman did not attempt to locate his registration or proof of insurance. Sgt. Barnhart asked Gladman if he had been drinking. Gladman admitted to drinking three beers in the last hour at the Horseshoe Bar.

{¶ 4} Before asking Gladman to exit the vehicle, Sgt. Barnhart directed him to recite the alphabet from the letter "D" to the letter "R," but Gladman was unable to do so. Sgt. Barnhart ordered Gladman out of the truck in order to submit to field sobriety tests. Sgt. Barnhart testified that when he got out of the truck, Gladman was unsteady on his feet

and his gait was "wobbly" as he walked to the area where the field sobriety tests were to be administered. Sgt. Barnhart administered the horizontal gaze nystagmus (HGN) test, the one-leg stand test, and the walk and turn test. Gladman failed all three field sobriety tests. We note that during the one-leg stand test, Gladman stated to Sgt. Barnhart, "We both know I can't do this test."

{¶ 5} Sgt. Barnhart subsequently arrested Gladman and transported him to the Clark County Jail. At the jail, Sgt. Barnhart asked Gladman if he would consent to a breathalyzer exam. Gladman submitted to the exam, and he registered two times. The machine, an Intoxylizer 8000, obtained valid readings from both tests and reported the lower of the two readings as indicative of Gladman's alcohol level. Specifically, Gladman's blood alcohol level measured .149 grams of alcohol per 210 liters of breath.

{¶ 6} Gladman was charged with operating a vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a); operating a vehicle with a prohibited concentration of alcohol, in violation of R.C. 4511.19(A)(1)(d); and a marked lane violation, pursuant to R.C. 4511.33. At his arraignment on October 16, 2012, Gladman pled not guilty. Gladman filed a motion to suppress all of the evidence as it related to his initial stop and subsequent arrest. Gladman also argued that the results of the breathalyzer exam should be suppressed because the correct procedures were not followed regarding administration of the test.

{¶ 7} A hearing was held on Gladman's motion to suppress on April 16, 2013. In a judgment entry filed on June 12, 2013, the trial court overruled Gladman's motion to suppress. Gladman subsequently pled no contest to one count of OVI, in violation of R.C.

4511.19(A)(1)(a), and the remaining charges were dismissed. The trial court found Gladman guilty and sentenced him to three days in jail. The trial court also fined Gladman $375.00 and court costs, suspended his driver's license for one year, and ordered him to attend a weekend intervention program for which he would receive credit for the three days of jail time he was ordered to serve.

{¶ 8}  It is from this judgment that Gladman now appeals.

{¶ 9}  Gladman's first assignment of error is as follows:

{¶ 10}  "THE TRIAL COURT ERRED BY FAILING TO SUPPRESS ALL EVIDENCE BECAUSE THE POLICE OFFICER DID NOT HAVE A REASONABLE, ARTICULABLE SUSPICION APPELLANT WAS DRIVING UNDER THE INFLUENCE OF ALCOHOL, THUS HAVING NO REASON TO DETAIN THE APPELLANT FOR THE PURPOSE OF ADMINISTERING A FIELD SOBRIETY TEST AND SUBSEQUENT BREATHALYZER TEST."

{¶ 11}  In his first assignment, Gladman contends that the trial court erred when it overruled his motion to suppress all of the evidence seized as a result of a traffic stop conducted by Sgt. Barnhart. Specifically, Gladman argues that he had only committed de minimis traffic violations that did not provide Sgt. Barnhart with a reasonable articulable suspicion to initiate a traffic stop. Gladman also argues that there was little or no evidence that he was driving while under the influence of alcohol.

{¶ 12}  In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist. 1996),

quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist. 1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*.

{¶ 13} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A traffic stop by a law-enforcement officer must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

{¶ 14} A police officer may stop and detain a motorist when he has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*. *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, at ¶13; *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996). We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047.

{¶ 15}   In support of his argument, Gladman cites to two cases from our district, to wit: *State v. Spillers*, 2d Dist Darke No. 1504, 2000 WL 299550 (March 24, 2000); and *State v. Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664 (December 1, 2000).   In those cases, we held that traffic violations of a de minimis nature are not sufficient, even when combined with a slight odor of an alcoholic beverage and an admission of having consumed "a couple" of beers, to support a reasonable and articulable suspicion of driving under the influence. *Id.*   In *Spillers*, we affirmed the trial court's finding that the defendant's commission of de minimis marked-lane violations, coupled with the officer's detection of a "slight" odor of alcohol and defendant's admission that he had a couple of beers, was insufficient articulable suspicion to justify the defendant's detention for field sobriety testing. 2d Dist Darke No. 1504, 2000 WL 299550.   In *Dixon,* the defendant was stopped only because the officer thought he observed a window tint violation. 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664.   No erratic driving was observed. *Id.*   After the stop occurred, the police officer noticed an "unspecified odor" of alcohol about defendant's person, and the defendant admitted to consuming "one or two" beers over an unknown time span. *Id.*   These cases are factually distinguishable from the case at bar.

{¶ 16}   In *State v. Clark*, 2d Dist. Darke No. 1733, 2009-Ohio-529, a police officer observed the defendant drift across the right hand berm line twice before initiating a traffic stop.   After initiating the stop, the officer noticed a "medium" odor of alcohol emanating from the defendant.   The officer further testified that the defendant had bloodshot, glassy eyes, his speech was slurred, and he was having trouble walking.   We found that the officer had a reasonable and articulable suspicion that the defendant had committed a marked lane violation, in derogation of R.C. 4511.33, thereby justifying a traffic stop.   The defendant's

subsequent arrest for driving while under the influence was supported by the totality of the circumstances.

{¶ 17} Similar to the circumstances observed in *Clark*, Sgt. Barnhart observed Gladman drive onto or cross over the white line on the edge of the road between eight to ten times within a span of two miles. We note that Sgt. Barnhart observed the foregoing traffic violations occur immediately after Gladman left the vicinity of a bar at approximately two a.m. Sgt. Barnhart testified that he also observed that Gladman activated his turn signal for approximately ten seconds but never turned anywhere. Based on his observations, Sgt. Barnhart was clearly justified in initiating a traffic stop of Gladman's vehicle.

{¶ 18} Moreover, upon approaching the vehicle, Sgt. Barnhart observed that Gladman's eyes were glassy, his speech was very slurred, and that he had a "moderate" odor of alcohol about his person. Sgt. Barnhart asked for Gladman's license, registration, and proof of insurance. Gladman, however, only provided Sgt. Barnhart with his driver's license. Sgt. Barnhart testified that Gladman did not attempt to locate his registration or proof of insurance. Significantly, Sgt. Barnhart asked Gladman if he had been drinking, and he admitted to drinking three beers in the last hour at the Horseshoe Bar. In light of the foregoing, Sgt. Barnhart had sufficient indicia of Gladman's intoxication to establish a reasonable, articulable suspicion to detain him for field sobriety tests. We also note that Gladman failed all three field sobriety tests administered by Sgt. Barnhart, thereby further justifying his arrest for OVI.

{¶ 19} Gladman's first assignment of error is overruled.

{¶ 20} Gladman's second and final assignment of error is as follows:

{¶ 21} "THE TRIAL COURT ERRED BY FAILING TO SUPPRESS THE RESULTS OF THE BREATHALYZER TEST AS IT WAS NOT ADMINISTERED PROPERLY."

{¶ 22} In his final assignment, Gladman argues that the evidence adduced at the suppression hearing established that Sgt. Barnhart administered the breathalyzer test improperly. Thus, Gladman asserts that the results of the test should have been suppressed.

{¶ 23} We note that Gladman pled no contest to OVI, in violation of R.C. 4511.19(A)(1)(a), which prohibits a person from driving a vehicle "under the influence of alcohol, a drug of abuse, or a combination of them." The charge for marked lanes violation and the charge for OVI with a prohibited concentration of alcohol, in violation of R.C. 4511.19(A)(1)(d), were dismissed.

{¶ 24} A conviction under R.C. 4511.19(A)(1)(a) focuses on the conduct of the defendant and observations of the arresting officers, rather than the results of a chemical test or breathalyzer exam as does R.C. 4511.19(A)(1)(d). Accordingly, Gladman's arguments regarding the admissibility of the results of the breathalyzer exam are completely irrelevant to his conviction for violating R.C. 4511.19(A)(1)(a). By pleading no contest to R.C. 4511.19(A)(1)(a), Gladman admitted the truth of the facts substantiating the elements of that charge. The facts supporting the charge include Gladman's impaired driving, his glassy eyes, his slurred speech, his difficulty walking, and his inability to pass any of the field sobriety tests administered by Sgt. Barnhart. The results of the breath test are not necessary or required to sustain the trial court's finding of guilt after Gladman's no contest plea to a violation of R.C. 4511.19(A)(1)(a). Thus, any issues regarding the admissibility of the results of the breathalyzer exam are moot.

{¶ 25} Gladman's second assignment of error is overruled.

{¶ 26} Both of Gladman's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and HALL, J., concur.

Copies mailed to:

Marc T. Ross
David M. McNamee
Hon. Denise L. Moody