**[Cite as *State v. Nelson*, 2017-Ohio-2884.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 27324 |
| | : | |
| v. | : | T.C. NO. 16-CR-911 |
| | : | |
| TANIECE L. NELSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

· · · · · · · · · · ·

## O P I N I O N

Rendered on the ___19th___ day of _____May_____, 2017.

· · · · · · · · · ·

MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellant

KATE L. BOWLING, Atty. Reg. No. 0084442, P. O. Box 750934, Dayton, Ohio 45475
    Attorney for Defendant-Appellee

· · · · · · · · · · · · ·

FROELICH, J.

{¶ 1} The State of Ohio appeals from a judgment of the Montgomery County Court of Common Pleas, which granted Taniece Nelson's motion to suppress evidence on the basis that the police officer lacked reasonable, articulable suspicion to conduct field

sobriety tests. For the following reasons, the judgment of the trial court will be affirmed.

**{¶ 2}** The traffic stop in question occurred on March 19, 2016. On March 29, 2016, Nelson was indicted on two counts of operating a vehicle under the influence (R.C. 4511.19(A)(1) and (G)(1)(d), three or four priors within 6 years), felonies of the fourth degree. She filed a motion to suppress the field sobriety tests and chemical tests, as well as the officer's observations during those tests. The trial court conducted a hearing on the motion and granted the motion to suppress.

**{¶ 3}** The State raises one assignment of error on appeal, arguing that the police officer had reasonable, articulable suspicion to conduct field sobriety tests after Nelson's traffic stop, and that the trial court therefore erred in suppressing the evidence against Nelson.

**{¶ 4}** In deciding a motion to suppress, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Pence*, 2d Dist. Clark No. 2013 CA 109, 2014-Ohio-5072, ¶ 7, citing *State v. Hopfer,* 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford,* 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

**{¶ 5}** The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right to be free from unreasonable

searches and seizures. *State v. Orr,* 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). A police officer may stop and detain a motorist when he or she has a reasonable, articulable suspicion that the motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, without running afoul of constitutional protections. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8; *State v. Stewart,* 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 13, citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We determine the existence of reasonable, articulable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, ¶ 14, quoting *State v. Heard,* 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14.

{¶ 6} In determining whether police intrusion upon a citizen's protected liberty interests is reasonable, both the extent of the intrusion and the basis for suspicion must be considered. In other words, the greater the intrusion, the greater the basis for suspicion must be. *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, * 3 (Mar. 24, 2000), citing *Xenia v. Beatty,* 2d Dist. Greene No. 93-CA-28, 1994 WL 124853 (April 13, 1994) and *Terry.* Thus, having reasonable, articulable suspicion of a traffic violation does not, in itself, justify the administration of field sobriety tests. Careful attention must be paid to each stage of the detention to ensure that the extent of the intrusion is warranted by the officer's reasonable, articulable suspicion at that point. *Spillers* at * 3; *State v. Swartz*, 2d Dist. Miami No. 2008 CA 31, 2009-Ohio-902, ¶ 11.

{¶ 7} The only witness at the hearing on the motion to suppress was Officer

Matthew Burian of the Kettering Police Department, who was called by the State. Burian had been a patrol officer for almost two years at the time of the hearing.

{¶ 8} Officer Burian testified that, on Saturday, March 19, 2016, at around 9:30 p.m., he observed Nelson driving northbound in the "right through lane" on South Dixie Drive in Kettering. As Burian followed the vehicle, he witnessed the driver's side tires drift to the left twice, crossing over the painted line markings on the left side of the lane by two tire widths each time. After the second time, the car "drifted" back into its lane and then to the right, nearly striking the right curb. There was no line on the right side of the lane. Burian initiated a traffic stop. Nelson pulled her car to the side of the road without incident.

{¶ 9} Officer Burian approached Nelson's vehicle and requested her driver's license and insurance information. Nelson did not exhibit any problems with dexterity as she looked through her purse. Nelson informed Burian that she did not have her license with her and did not have an insurance card because her vehicle was new. Burian ran the information provided verbally by Nelson through his computer and discovered that Nelson did not have driving privileges and was under numerous suspensions.

{¶ 10} When Burian returned to Nelson's vehicle, he noticed that Nelson's eyes were "bloodshot" and "somewhat watery"; he also detected a "moderate odor of an alcoholic beverage being emitted from her inside the vehicle." Burian testified that the odor was not strong, but that it "seemed to intensify as [Nelson] spoke." When Burian asked Nelson if she had been drinking, she stated that she "had been drinking last night." Burian tried to clarify whether Nelson meant the previous night (Friday), or "just earlier sometime on Saturday"; Nelson did not clarify her response and, according to Burian,

"indicat[ed] some level of surprise or confusion" that it was Saturday. She was compliant and cooperative throughout their encounter.

{¶ 11} Based on these observations, Burian decided to investigate whether Nelson was impaired; he asked her to exit the vehicle, and her behavior when she exited the car and walked to the sidewalk was not noteworthy. Burian performed several field sobriety tests, which indicated to him that Nelson was impaired. Burian arrested Nelson for driving under the influence. Nelson's breath alcohol content was tested a short time later, and it was over the legal limit.

{¶ 12} Nelson's motion to suppress did not dispute that there was justification for the traffic stop; rather, she argued that there was no reasonable, articulable suspicion for Officer Burian to conduct field sobriety tests. The trial court agreed with Nelson; it found that Nelson had not admitted to drinking the evening of the stop, that her traffic violation had been "de minimis," and that her speech was not impaired. The court also found that neither Nelson's movement when she exited the car nor her demeanor indicated any impairment, that there had been no complaints from third parties about her driving, and that it was not particularly late at the time of the traffic stop.

{¶ 13} The trial court concluded that Nelson's traffic violation was not a "substantial violation" and that, while it may have supported a "hunch" on Officer Burian's part that Nelson was impaired, it did not rise to the level of reasonable, articulable suspicion. The court further concluded that the "moderate" smell of alcohol was not entitled to "much weight," because drinking before driving is not illegal in Ohio unless it rises to a level that impairs one's ability to drive. The court found that Nelson had not admitted to drinking on the night of the traffic stop. The trial court did not find Burian's

observations about Nelson's eyes to be significant, noting that her eyes were not described as "glassy." The court also found Nelson's alleged confusion about the day of the week to be insignificant, because Burian had decided to conduct field sobriety tests before this part of the their conversation.

{¶ 14} On appeal, the State questions the trial court's weighing of several factors in its judgment and cites cases that call into question whether the court should have given each factor the weight that it did. For example, the State asserts that there is no meaningful distinction between bloodshot or watery eyes and glassy eyes, in terms of the relevance to being under the influence. It also disputes the court's characterization of the traffic violation as "slight excursion" and not substantial, and argues that a "moderate" odor of alcoholic beverages was enough (along with the other factors presented here) to justify further investigation. The State further argues that Officer Burian could have reasonably concluded that Nelson was not telling the truth about how recently she had been drinking and that she was being evasive on that issue, although Burian did not testify that he had reached such conclusions. Finally, the State asserts that Nelson's alleged confusion as to the day of the week was a valid consideration in determining whether Burian had reasonable, articulable suspicion to justify field sobriety tests, even if he testified that he had decided to conduct field sobriety tests before she made this statement.

{¶ 15} The State casts Burian's testimony in the light most favorable to the State, which the trial court was not required to do. For example, the State argues that Nelson's statement that she had not had a drink since the night before was significant, because the officer could have inferred from the statement that Nelson was confused about what

day it was. However, the court need not have concluded that she was being "evasive"; even Officer Burian did not characterize Nelson's statement this way. Moreover, the trial court's factual findings were intertwined with its weighing of the credibility of Burian's testimony. Although Burian's testimony was uncontradicted because he was the only witness at the hearing, the court was not required to credit all of his testimony; it could have reasonably drawn different inferences from Burian's observations than the State or Burian did.

{¶ 16} Several cases from this district support the trial court's conclusion.

{¶ 17} In *Swartz*, 2d Dist. Miami No. 2008 CA 31, 2009-Ohio-902, a car was stopped in the early morning hours after failing to signal a left turn. The officer observed that the driver's eyes were glassy and bloodshot and that he (the officer) was "able to smell the odor of alcohol on [the driver's] breath"; he did not testify as to the strength of the smell. The driver denied that he had been drinking. The officer did not believe that the driver was sober and ordered him to submit to field sobriety tests. The trial court sustained the driver's motion to suppress, finding that the evidence was insufficient to establish that the officer had a reasonable, articulable suspicion of driving under the influence. We affirmed, stating that "[a] de minimis traffic violation, coupled with glassy, bloodshot eyes and an unspecified odor of alcohol is insufficient justification to conduct field sobriety tests." *Swartz* at ¶ 16.

{¶ 18} In *State v. Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664 (Dec. 1, 2000), a police officer stopped the driver's car for a window tint violation, which was not disputed. It was 2:20 a.m., and the officer subsequently observed that the driver had glassy, bloodshot eyes and that he had an "odor of alcohol" about his person; the

driver also admitted that he had consumed one or two beers. The trial court denied the driver's motion to suppress, but we reversed on appeal. We found that the "mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence." Further, we were unpersuaded that the odor, coupled with the defendant's admission that he had had one or two beers, or his bloodshot, glassy eyes in the early morning hours, established a reasonable, articulable suspicion justifying the field sobriety tests.

{¶ 19} *Dixon* relied, in part, on *Spillers,* 2d Dist. Darke No. 1504, 2000 WL 299550, in which we held that "de minimus" lane violations, combined with a "slight odor of an alcoholic beverage" and the admission to having consumed "a couple" of beers, were not sufficient to justify the administration of field sobriety tests.

{¶ 20} We recognize, however, that on slightly different facts, the trial court – or this court – might reach a different conclusion. *See, e.g, State v. Clark,* 2d Dist. Darke No. 1733, 2009-Ohio-529 (where police observed the defendant drift across the right hand berm line twice, noticed a "medium" odor of alcohol emanating from the defendant, and defendant exhibited bloodshot, glassy eyes, slurred speech, and difficulty walking, we found reasonable, articulable suspicion to justify field sobriety tests); *State v. Criswell,* 162 Ohio App.3d 391, 2005-Ohio-3876, 833 N.E.2d 786 (2d Dist.) (driving 23 mph over the speed limit, "bloodshot and glassy eyes," moderate odor of alcohol on breath, and admission to having a "few beers" justified conducting field sobriety tests); *State v. Gladman,* 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554 (where officer observed driver

crossing the white line on the edge of the road eight to ten times within a span of two miles after he left a bar, saw him activate a turn signal without turning, observed driver's glassy eyes and slurred speech, and detected "moderate" odor of alcohol, and driver also admitted to having three beers, the officer had reasonable, articulable suspicion to conduct field sobriety tests.).   *See also State v. Downing*, 2d Dist. Greene No. 2001-CA-78, 2002 WL 441353, *2 (March 22, 2002) ("[I]t appears that the smell of alcohol and glassy eyes at a late hour, without more, is not sufficient to conduct a field sobriety test. * * * However, we conclude that the additional element of erratic driving or specifically a 'strong' odor of alcohol seem to tip the scales in favor of allowing the tests.").

{¶ 21} These cases are often close calls based on the totality of the circumstances, the trial court's weighing of the evidence, and its determinations of credibility.  Here, the State argues that Nelson was "evasive" about her drinking and "confused" as to the day of the week, but these conclusions were not compelled by Officer Burian's testimony.  Similarly, although the State argues that Nelson's traffic violation was "more analogous" to *State v. Downing*, *supra*, in which the defendant "swerve[d] out of his lane four separate times," than to cases in which the traffic violation is described as "de minimis" or "slight," we are reluctant to second guess the trial court's determination of this factual issue.  Under the totality of the circumstances presented in Nelson's case, and giving due deference to the trial court's factual determinations, we cannot conclude that the trial court erred in granting Nelson's motion to suppress.

{¶ 22}  The State's assignment of error is overruled.

{¶ 23}  The judgment of the trial court will be affirmed.

DONOVAN, J., concurs.

TUCKER, J., dissenting:

{¶ 24} I respectfully dissent. The majority opinion, at paragraph 10, accurately sets forth the information suggesting impairment known to Officer Burian before Taniece Nelson completed field sobriety testing. I would conclude that this information, when considered "through the eyes of [a] reasonable and prudent police officer on the scene who must react to events as they unfold", provided the required reasonable, articulable suspicion that Nelson was impaired. *State v. Gladman*, 2d Dist. Clark No. 2013-CA-99, 2014-Ohio-2554, ¶ 14, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14.

{¶ 25} I appreciate that cases on this issue are often close calls that turn on the facts of each case, and that we must give due deference to the trial court's factual determinations. This being said, the trial court's factual conclusions regarding Nelson's excursions into the opposite lane of travel and, on the second occasion, driving across her lane of travel nearly striking the curb on the right side of the road coupled with the moderate odor of alcohol emanating from Nelson and Nelson's denial of recent alcohol consumption in the face of a moderate odor of alcohol are specific and articulable facts which, I suggest, compel the conclusion there existed a reasonable, articulable suspicion Nelson was impaired. I, accordingly, would conclude the field sobriety testing was constitutionally permissible under the Fourth Amendment.

. . . . . . . . . . .

Copies mailed to:

Michael J. Scarpelli
Kate L. Bowling

Hon. Richard S. Skelton