[Cite as *State v. St. Amand*, 2019-Ohio-3524.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28268 |
| | : | |
| v. | : | Trial Court Case No. 2018-TRC-8851 |
| | : | |
| JENNIFER ST. AMAND | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of August, 2019.

. . . . . . . . . .

ANDREW D. SEXTON, Atty. Reg. No. 0070892, City of Dayton Prosecutor's Office, 335 West Third Street, Room 390, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

MICHELLE M. MACIOROWSKI, Atty. Reg. No. 0067692, 7333 Paragon Road, Suite 170, Dayton, Ohio 45459
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Jennifer St. Amand appeals her conviction for one count of operating a vehicle under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(d). St. Amand filed a timely notice of appeal with this Court on January 15, 2019.

{¶ 2} The incident which formed the basis for St. Amand's conviction occurred shortly after midnight on October 23, 2018, when St. Amand was driving northbound in her motor vehicle on Brown Street in Dayton, Ohio. University of Dayton Police Officer Phet Phong, who was on patrol in the area, testified that he began following St. Amand's vehicle after he observed her speeding. Officer Phong testified that he did not measure St. Amand's speed with a radar gun, but he believed she was speeding based upon his training and experience.

{¶ 3} While following St. Amand, Officer Phong observed her cross over the center line in the roadway by approximately one foot. Officer Phong testified that St. Amand then turned onto Wyoming Street. Officer Phong testified that he continued following St. Amand after she turned and observed her once again cross over the center line by approximately one foot. Thereafter, Officer Phong activated his overhead lights and initiated a traffic stop of St. Amand. Officer Phong testified that instead of pulling over to the side of the road next to the curb, St. Amand abruptly stopped her vehicle while it was still in the roadway.

{¶ 4} Officer Phong exited his cruiser and walked over to the front passenger side door of St. Amand's vehicle and directed her to roll down the window. Officer Phong testified that St. Amand then proceeded to roll down her rear passenger side window

rather than the front passenger side window. St. Amand then corrected herself and rolled down the front passenger side window to speak with Officer Phong. Officer Phong testified that, at this point, St. Amand "seemed disoriented," and he detected the slight odor of alcohol while he spoke with her.

{¶ 5} Officer Phong testified that he directed St. Amand to produce her driver's license, her vehicle registration, and her proof of insurance card. However, St. Amand only presented her driver's license and a medical card to Officer Phong. Officer Phong testified that St. Amand never produced her vehicular insurance card or her registration during the stop. Thereafter, Officer Phong asked St. Amand if she had been drinking alcohol that night, and she replied that she had not. Based upon his training and 14 years of law enforcement experience, Officer Phong believed that St. Amand was operating her vehicle under the influence of alcohol. Accordingly, Officer Phong ordered St. Amand out of the vehicle and directed her to perform the walk and turn field sobriety test. Officer Phong testified that he observed that St. Amand was unsteady on her feet and was swaying from side to side. Having failed the field sobriety test, Officer Phong ultimately cited St. Amand for OVI, and rather than transport her to the county jail pending arraignment, he released her into the custody of her mother.

{¶ 6} At her arraignment on October 30, 2018, St. Amand pled not guilty to the charged offense. On November 15, 2018, St. Amand filed a motion to suppress the results of the field sobriety test, specifically arguing that that Officer Phong did not have a reasonable articulable suspicion to administer the field sobriety test on the night of the stop. A hearing was held on said motion on December 13, 2018. Ruling from the bench, the trial court overruled St. Amand's motion to suppress. Immediately after the

motion to suppress was overruled, St. Amand pled no contest to one count of OVI, and the trial court found her guilty of the offense. The trial court sentenced St. Amand to six months of basic supervised probation and ordered her to attend the Weekend Intervention Program (W.I.P.).

{¶ 7} It is from this judgment that St. Amand now appeals.

{¶ 8} St. Amand's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS AS THE OFFICER DID NOT HAVE A REASONABLE ARTICULABLE SUSPICION THAT DEFENDANT WAS UNDER THE INFLUENCE OF ALCOHOL.

{¶ 9} In her assignment, St. Amand contends that the trial court erred when it overruled her motion to suppress. Specifically, St. Amand argues that Officer Phong did not have a reasonable articulable suspicion to administer the field sobriety test on the night of the stop.

{¶ 10} In overruling St. Amand's motion to suppress at the end of the suppression hearing, the trial court stated as follows:

* * * Based upon limited review of the information that the defense had, the Court believes at the time of filing the motion [to suppress], looking at the video I can understand the definite reason for filing the motion and I can understand their arguments today, but I am going to overrule the motion today. In looking at everything and hearing the testimony of the officer, in addition to what was observed on the tape, the Court does find the officer had a reasonable suspicion. In looking at the multiple moving violations, I

would say that the moving violation, the lane violation, isn't much different than what was – what the defense described in *Nelson*. They talked about two tire lengths in *Nelson*. The officer said by a foot or so in this case. In a different unit of measure, different estimations, but I don't think those two are necessarily far off. The Court would also note the odd manor [sic] of the stop. We've indicated a couple of times during this hearing, about the defendant being pulled over, but I don't think this defendant actually pulled over. I think she stopped. Pulled over is pulling to the curb and doing a normal traffic stop. The officer's observations that she appeared, at least, disoriented to him [sic]. I know the defense noted this is his first experience with Ms. St. Amand. Some people that we encounter on an everyday basis may appear disoriented, even though that's their natural state. But, at least, in terms of his observations, his interaction with her on this occasion, she appeared to him to be disoriented. The slight odor of alcohol, the wrong documentation, and I understand the defense's argument, but it did – He asked for the driver's license, registration and vehicle insurance and then she actually pulled out the [medical] insurance card. Took a strong look at it and then set it down and then handed all that to the officer. So, I think all of that, combined, I think gives the officer the reasonable suspicion to detain for standard field sobrieties. So, I will overrule the motion to suppress at this time.

{¶ 11} As this Court has previously noted:

In ruling on a motion to suppress, "the trial court assumes the role of the

trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherfo*rd, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (197[3]). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*; *State v. Shipp*, 2d Dist. Montgomery No. 24933, 2012-Ohio-6189, ¶ 11.

*State v. Mobley*, 2d Dist. Montgomery No. 26044, 2014-Ohio-4410, ¶ 11.

{¶ 12} As noted by the Ohio Supreme Court in *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8:

The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *State v. Orr* (2001), 91 Ohio St.3d 389, 391, 745 N.E.2d 1036. The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime. *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660; *Berkemer v. McCarty* (1984), 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317, quoting *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607. Further,

"[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, at paragraph one of the syllabus.

{¶ 13} However, "[a]n officer cannot continue to detain a suspect past the time necessary for investigating and completing the initial traffic stop merely to conduct a 'fishing expedition' for other criminal activity." *State v. Brown,* 2d Dist. Greene No. 2011 CA 52, 2012-Ohio-3099, ¶ 13, quoting *State v. Jones*, 2d Dist. Montgomery No. 23920, 2010-Ohio-5522, ¶ 16. To justify further detention for the administration of field sobriety tests, "the officer must have a reasonable, articulable suspicion that a person is driving under the influence[.]" *Id.*, citing *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264, ¶ 11 (2d Dist.).

{¶ 14} "Whether an officer had a reasonable, articulable suspicion to administer field sobriety tests is a 'very fact-intensive' determination." *Santiago* at ¶ 13, quoting *State v. Wells*, 2d Dist. Montgomery No. 20798, 2005-Ohio-5008, ¶ 9. In determining whether there was a reasonable, articulable suspicion, the court must evaluate the totality of the circumstances. *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, ¶ 14. These circumstances must be considered " 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *Id.*, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14. If there are no articulable facts that give rise to a suspicion of illegal activity, then the continued detention constitutes an illegal seizure. *State v. Robinson,* 2d Dist. Greene No. 2001 CA 118, 2002 WL 1332589, *2 (June 14, 2002), citing *State v. Robinette*, 80 Ohio St.3d 234, 240, 685

N.E.2d 762 (1997).

{¶ 15} As this court has stated previously, "[m]any observations can satisfy this reasonable, articulable suspicion, including the odor of an alcoholic beverage emanating from the vehicle, glassy bloodshot eyes, * * * and slow or slurred speech." (Citation omitted.) *Brown* at ¶ 13. However, this court has "not required any specific number of indicators, nor have we adopted a balancing test." *State v. Adams*, 2017-Ohio-7743, 97 N.E.3d 1137, ¶ 33 (2d Dist.).

{¶ 16} It is well established by this Court that traffic violations of a de minimus nature, combined with a slight odor of an alcoholic beverage, and an admission of having consumed "a couple of beers," are insufficient to support a reasonable, articulable suspicion of driving under the influence. *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, *3 (Mar. 24, 2000); *see also State v. Morgan*, 2d Dist. Clark No. 07-CA-67, 2007-Ohio-6691, ¶ 9 (one de minimus marked-lane violation, the odor of alcohol of unspecified intensity, and an admission of consuming alcohol earlier in the day did not provide reasonable, articulable suspicion of driving under the influence).

{¶ 17} In *Spillers*, the facts known to the officer who stopped Spillers "included three or four marked lane violations, which the trial court found to have been 'de minimis,' followed by a significant interval in which Spillers drove home with neither any traffic violations, nor any remarkable driving, together with [the officer's] detection of a 'slight' odor of an alcoholic beverage, which he believed to have been beer, and Spillers' admission that he had consumed 'a couple' of beers." *Id.* at *3. This Court determined as follows:

The issue is close. However, we conclude that traffic violations of a

de minimis nature are not sufficient, combined with a slight odor of an alcoholic beverage, and an admission to having consumed "a couple" of beers, to support a reasonable and articulable suspicion of Driving Under the Influence. Few of us drive any appreciable distance without committing traffic violations that could properly be characterized as "de minimis." By themselves, then, traffic violations of a de minimis nature are not indicative of impaired driving. Otherwise, virtually every motorist could reasonably be suspected of impaired driving, since virtually every motorist, driving a distance of several miles, will fail to signal a lane change; touch, or even slightly cross, a line marking a lane; or exceed the speed limit slightly. Furthermore, a slight odor of an alcoholic beverage, without more, is not indicative of impaired driving. The law prohibits driving under the influence of alcohol; it does not prohibit driving after the mere consumption of an alcoholic beverage. *State v. Taylor* (1981), 3 Ohio App.3d 197, at 198, 444 N.E.2d 481.

The closer question, of course, is whether the conjunction of these facts—nominal traffic violations combined with a slight odor of alcohol—is sufficient to create a reasonable articulable suspicion of Driving Under the Influence. Because, in our experience, virtually the entire motoring public commits nominal traffic violations regularly, we conclude that even the conjunction of these facts is insufficient to create a reasonable articulable suspicion of Driving Under the Influence. A slight odor of an alcoholic beverage is insufficient, by itself, to trigger a reasonable suspicion of DUI,

and nominal traffic violations, being common to virtually every driver, add nothing of significance. Accordingly, we conclude that the trial court did not err in finding that the detention of Spillers for the purpose of administering a field sobriety test was unlawful.

*Id.* at \*3.

{¶ 18} In *State v. Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664, (Dec. 1, 2000), the arresting officer observed what he believed to be a window tint violation. The officer's subsequent observations "included the fact that it was 2:20 in the morning, that Dixon had glassy, bloodshot eyes, that he had an odor of alcohol about his person, and that he admitted that he had consumed one or two beers." *Id.* at \*2. This Court noted that, "unlike in *Spillers*, \* \* \* a police officer did not observe any erratic driving before administering field sobriety tests. Although, in the case before us, the police officer observed glassy, bloodshot eyes, that observation is readily explained by the lateness of the hour, 2:20 a.m." *Id.* This Court concluded as follows:

The mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence. Nor is the subject's admission that he had had one or two beers.

*Id.*

{¶ 19} Conversely, we have found a reasonable, articulable suspicion of driving under the influence where a moderate odor of alcohol was detected in conjunction with multiple other factors, such as glassy or bloodshot eyes, slurred speech, a flush face,

fumbling, or unresponsiveness. *See Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, at ¶ 17-18 (moderate odor of alcohol about motorist's person, glassy and bloodshot eyes, slurred speech, unresponsiveness to request for registration and proof of insurance, and admission of consuming three beers in the last hour provided a reasonable, articulable suspicion of driving under the influence); *Adams*, 2017-Ohio-7743, 97 N.E.3d 1137, at ¶ 8, 9, and 34 (moderate odor of alcohol emanating from the defendant's vehicle, glassy eyes, a flush face, fumbling with insurance card, minor traffic violation, and admission of consuming one drink three hours earlier provided a reasonable, articulable suspicion of driving under the influence); *State v. Criswell*, 162 Ohio App.3d 391, 2005-Ohio-3876, 833 N.E.2d 786, ¶ 2-3 and 10 (2d Dist.) (moderate odor of alcohol on defendant's breath, bloodshot and glassy eyes, driving 23 mph over the speed limit, and admission to having a few beers justified conducting field sobriety tests).

{¶ 20} Recently, however, in *State v. Nelson*, 2d Dist. Montgomery No. 27324, 2017-Ohio-2884, we affirmed the trial court's finding that no reasonable, articulable suspicion of intoxication existed under circumstances where: (1) the investigating officer detected a moderate odor of an alcoholic beverage emanating from the defendant's vehicle; (2) the odor of alcohol intensified as defendant spoke; (3) the officer observed that the defendant had bloodshot and somewhat watery eyes; and (4) the defendant was pulled over for a de minimus moving violation. *Id.* at ¶ 10 and 21. In that case, although the investigating officer testified that the defendant advised him that she "had been drinking last night," the trial court found this testimony did not establish that the defendant admitted to drinking on the night of the traffic stop. *Id.* at ¶ 10 and 13. The officer in that case also testified that the defendant exhibited surprise or confusion as to what day of

the week it was, but the trial court found that this testimony was improper to consider given that the defendant exhibited such confusion after the investigating officer had already decided to conduct the field sobriety tests. *Id.* In deferring to the trial court's findings of fact in *Nelson*, we found that the moderate odor of alcohol that intensified as the defendant spoke, the defendant's bloodshot and watery eyes, and the de minimus moving violation *did not* provide the officer with a reasonable, articulable suspicion of intoxication for purposes of justifying field sobriety testing. *Id.* at ¶ 21.

{¶ 21} Upon review, we conclude that Officer Phong's testimony establishes specific and articulable facts which, taken together with rational inferences therefrom, warranted the administration of the field sobriety tests. Officer Phong began following St. Amand because he concluded that she was speeding upon his initial observation of her, and he observed her commit two marked lanes violations in which she crossed over the centerline by approximately a foot. Based upon his observation of three moving violations, Officer Phong initiated a traffic stop. Officer Phong testified that instead of pulling over to the side of the road next to the curb, St. Amand abruptly stopped her vehicle while it was still in the roadway. In fact, the video reflects that the vehicle was not pulled next to the curb. As to the manner in which St. Amand stopped her vehicle, Officer Phong testified that it was outside the norm of a traditional stop and contributed to his belief that St. Amand could be impaired.

{¶ 22} Furthermore, Officer Phong exited his cruiser and walked over to the front passenger side door of St. Amand's vehicle and directed her to roll down the window. Officer Phong testified that St. Amand then proceeded to roll down the rear passenger side window rather than the front passenger side window. Thereafter, St. Amand

corrected herself and rolled down the front passenger side window to speak with Officer Phong. Officer Phong testified that at this point, St. Amand "seemed disoriented," and he detected the slight odor of alcohol while he spoke with her.

**{¶ 23}** Finally, Officer Phong testified that he directed St. Amand to produce her driver's license, her vehicle registration, and her proof of insurance card. However, St. Amand only presented her driver's license and a medical insurance card to Officer Phong. Officer Phong testified that St. Amand never produced her vehicular insurance card or her registration during the stop. In our view, these facts constitute additional evidence that St. Amand was intoxicated due to her lack of coordination, confusion, and apparent disorientation. Notably, Officer Phong detected the odor of alcohol, but St. Amand insisted that she had not been drinking. Unlike in *Spillers*, *Dixon*, and *Nelson*, based upon the totality of the circumstances herein, we conclude that Officer Phong had a reasonable, articulable suspicion that St. Amand was driving under the influence of alcohol, thereby justifying the administration of the field sobriety test. Accordingly, the trial court did not err when it overruled St. Amand's motion to suppress.

**{¶ 24}** St. Amand's assignment of error is overruled.

**{¶ 25}** St. Amand's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Andrew D. Sexton

Michelle M. Maciorowski
Hon. Christopher D. Roberts